## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RM Holdco LLC, et al.[1] | Case No. 18-11795 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 13** |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND (B) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (III) SCHEDULING FINAL HEARING

Upon the Debtors' *Motion For Entry Of Interim And Final Orders (I) Authorizing Debtors To (A) Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) And (B) Use Cash Collateral Pursuant To 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant To 11 U.S.C. §§ 361, 362, 363, And 364, And (III) Scheduling Final Hearing* (the "Motion"),[2] seeking entry of (i) an interim order (this "Interim Order") and (ii) a final order (the "Final Order"); and the Debtors' having requested on the record at the interim hearing on the Motion (the "Interim Hearing") that the Court enter an Interim Order, *inter alia,*:

(a)       authorizing RM Opco LLC ("Opco") and its affiliated debtors (collectively, the "Debtors") to obtain secured postpetition financing on a superpriority basis (the "DIP Facility")

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: RM Holdco LLC (6847); RM Opco LLC (7122); RM HQ LLC (8615); RM Chevys LLC (N/A); RM Acapulco LLC (N/A); and RM El Torito LLC (N/A). The Debtors' headquarters and mailing address is 5660 Katella Avenue, Suite 200, Cypress, CA 90630. The Debtors operate restaurants under the following names: (1) El Torito Cantina Autentica; (2) Chevys Fresh Mex; (3) Acapulco Restaurant y Cantina; (4) El Torito Grill Mexican Revolution; (5) Sinigual Contemporary Mexican Cuisine; (6) Las Brisas; and (7) Who Song and Larry's.

[2]  Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the DIP Financing Agreement.

pursuant to the terms and conditions of that certain "DIP Financing and Guaranty Agreement," in substantially the form attached hereto as Exhibit A (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "DIP Financing Agreement"), by and among RM Opco, as borrower, RM Holdco LLC, RM Chevys LLC, RM Acapulco LLC, RM El Torito LLC and RM HQ LLC (each a "Guarantor", and collectively, the "Guarantors") and each lender party thereto (collectively, the "DIP Lenders"), and Wells Fargo Bank, National Association, in its capacity as agent (in such capacity, the "DIP Agent" and together with the DIP Lenders, the "DIP Secured Parties") on behalf of the DIP Lenders;

(b)    authorizing the Debtors to execute the DIP Financing Agreement and the other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Agent (as the same may be amended, restated, supplemented or otherwise modified from time to time, and collectively with the DIP Financing Agreement, the "DIP Loan Documents");

(c)    granting to the DIP Agent, for itself and for the benefit of the DIP Lenders, first priority security interests in and liens on all of the DIP Collateral (as defined below) to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Loan Documents, as applicable, this Interim Order and the Final Order (as defined below), as applicable (collectively, and including all "Obligations" as described in the DIP Financing Agreement, the "DIP Obligations"), subject only to Permitted Priority Liens (as defined below) and prior payment of the Carve-Out (as defined below);

(d)    granting allowed superpriority administrative expense claims to the DIP Agent and the DIP Lenders;

(e)    authorizing the Debtors to use Cash Collateral (as defined below);

(f)     authorizing the Debtors to grant adequate protection to Wells Fargo Bank, National Association, in its capacity as agent (in such capacity, the "Prepetition First Lien Agent") for certain lenders and noteholders (respectively, the "Prepetition First Lien Lenders" and the "Prepetition First Lien and Noteholders) under the "Financing Agreement (First Lien)," dated as of March 21, 2012, among the Debtors, the Prepetition First Lien Lenders, the Prepetition First Lien Noteholders, the guarantors party thereto and the Prepetition First Lien Agent (as the same has been amended, restated or modified from time to time prior to the Petition Date, the "Prepetition First Lien Financing Agreement," and together with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, instruments, amendments, and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition First Lien Loan Documents");

(g)     authorizing the Debtors to grant adequate protection to Wells Fargo Bank, National Association, in its capacity as agent (in such capacity, the "Prepetition Second Lien Agent" and, together with the Prepetition First Lien Agent, the "Prepetition Agents") for certain lenders (the "Prepetition Second Lien Lenders", together with the Prepetition First Lenders, the "Prepetition Lenders") under the "Amended and Restated Financing Agreement (Second Lien)," dated as of March 21, 2012, among the Debtors, the Prepetition Second Lien Lenders, the guarantors party thereto and the Prepetition Second Lien Agent (as the same has been amended, restated or modified from time to time prior to the Petition Date, the "Prepetition Second Lien Financing Agreement", and together with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, instruments, amendments, and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition Second Lien Loan Documents");

(h)     scheduling a hearing (the "Final Hearing"), pursuant to Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to consider entry of the Final Order (subparagraphs (a) through (h) collectively, the "Requested Relief");

and the interim hearing on the Requested Relief (the "Interim Hearing") having been held on August 7, 2018; and upon all of the pleadings filed with the Court and the evidence proffered or adduced at the Interim Hearing; and the Court having heard and resolved or overruled any and all objections to the Requested Relief; and it appearing that the Requested Relief is in the best interests of the Debtors, their estates, and creditors; and upon the record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.     Petition Date. On August 5, 2018 (the "Petition Date"), the Debtors commenced their chapter 11 cases (these "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of creditors holding unsecured claims (a "Creditors' Committee") has been appointed in any of these Chapter 11 Cases.

B.     Jurisdiction; Venue. The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D). The Court is a proper venue of these Chapter 11 Cases and the Requested Relief under 28 U.S.C. §§ 1408 and 1409.

---

[3]     Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

C.    <u>Notice</u>. Notice of the Motion, the relief requested therein and the Interim Hearing

(the "<u>Notice</u>") has been served by the Debtors pursuant to Bankruptcy Rules 2002 and 4001 on

(i) the Debtors' thirty largest unsecured creditors on a consolidated basis, (ii) counsel to the DIP

Agent and the Prepetition Agents, (iii) counsel to the TCP Lenders, (iv) counsel to the Z Capital

Lenders (v) any parties that have filed a notice of appearance in these Chapter 11 Cases pursuant

to Bankruptcy Rule 2002, (vi) all of the landlords of the Debtors' commercial real properties,

(vii) all known holders of liens upon the Debtors' assets, (viii) the United States Attorney for the

District of Delaware, (ix) the Internal Revenue Service and (x) the United States Trustee for the

District of Delaware.

D.    <u>Prepetition First Lien Obligations</u>

(i)    The commitments of the Prepetition First Lien Lenders and the Prepetition

First Lien Noteholders are divided into the First Out Term Loan A, the Term Loan A, and the

Term A Notes (in each case, as defined in the Prepetition First Lien Financing Agreement, each

of which bears interest at a per annum rate of 7%, payable in-kind, and each of which matured on

July 31, 2018. The First Out Term Loan A has first payment priority over the Term A Loan and

the Term A Notes.

(ii)    As of the Petition Date, (x) approximately $11,231,311.77 was

outstanding under First Out Term Loan A; (y) approximately $20,297,023.90 was outstanding

under Term Loan A; and (z) approximately $10,144,218.09 was outstanding in Term A Notes

(collectively with interest, fees, costs and other expenses due and owing under the Prepetition

First Lien Loan Documents, the "<u>Prepetition First Lien Obligations</u>").

(iii)    The Prepetition First Lien Obligations are secured by a first-priority lien

(the "<u>Prepetition First Priority Liens</u>") on substantially all of the Debtors' assets (the "<u>Prepetition</u>

First Lien Collateral"). For the avoidance of doubt, subparagraphs (i) through (iii) of this paragraph are subject to paragraph 15 below.

    E.    Prepetition Second Lien Debt

        (i)    The commitments of the Prepetition Second Lien Lenders are divided into the Senior Convertible Term B Loans, the Reimbursement Obligation Loans, the Convertible Term Loan B-1, the Term Loan B-1, and the Term Loan B (in each case, as defined in the Prepetition Second Lien Financing Agreement), each of which bears interest at a per annum rate of 8.5%, payable in-kind, and each of which matured on July 31, 2018. The relative priority of the tranche is set forth in the Prepetition Second Lien Financing Agreement.

        (ii)    As of the Petition Date, (i) approximately $61,035,916.94 remained outstanding under the Senior Convertible Term B Loans; (ii) approximately $17,534,710.00 remained outstanding under the Reimbursement Obligation Loans; (iii) approximately $17,824,258.25 remained outstanding under the Convertible Term Loan B-1; (iv) approximately $22,168,458.96 remained outstanding under Term Loan B-1; and (v) approximately $94,091,863.80 remained outstanding in Term Loan B (collectively, with interest, fees, costs and other expenses due and owing under the Prepetition Second Lien Loan Documents, the "Prepetition Second Lien Obligations").

        (iii)    The Prepetition Second Lien Obligations are secured by a second-priority lien (the "Prepetition Second Priority Lien," and together with the Prepetition First Priority Lien, the "Prepetition Liens") on substantially all of the Debtors' assets (the "Prepetition Second Lien Collateral," and together with the Prepetition First Lien Collateral, the "Prepetition Collateral"). For the avoidance of doubt, subparagraphs (i) through (iii) of this paragraph are subject to paragraph 15 below.

F.    <u>Intercreditor Agreement</u>.

(i)    The Prepetition Agents are party to that certain Intercreditor Agreement dated as of March 21, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Intercreditor Agreement</u>") to govern, among other things, the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Parties with respect to the Prepetition Collateral.  Pursuant to and on the terms set forth in the Intercreditor Agreement, the Prepetition First Priority Liens are senior and prior in right to the Prepetition Second Priority Liens.  The Debtors have acknowledged and agreed to, and are bound by, the Intercreditor Agreement.

G.    <u>Subordination Agreement</u>.

(i)    The Prepetition Agents are party to that certain Subordination Agreement dated as of March 21, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Subordination Agreement</u>") to govern, among other things, the respective rights, priority, and positions of the Prepetition Secured Parties with respect to the subordinated unsecured debt issued by RM Holdco LLC pursuant to that certain Subordinated Convertible Loan Agreement dated as of March 21, 2012 (the "<u>Subordinated Financing Agreement</u>").  Pursuant to and on the terms set forth in the Subordination Agreement, all debt incurred by RM Holdco LLC pursuant to the Subordinated Financing Agreement is junior in priority of payment and subordinated to the Prepetition First Lien Obligations and the Prepetition Second Lien Obligations.  The Debtors have acknowledged and agreed to, and are bound by, the Subordination Agreement.

H.    <u>Debtors' Acknowledgments and Stipulations</u>.    The Debtors acknowledge, represent, stipulate, and agree, subject to the terms and provisions of paragraph 15 below, that:

(i)    upon approval of this Interim Order by the Court, the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, validity and enforceability of the DIP Loan Documents and the use of Cash Collateral to which any Debtor is a party;

(ii)    until such time as all DIP Obligations are indefeasibly paid in full in cash (or credit solely (x) in the case of any Obligations owed to the Z Capital Lenders or their affiliates and (y) to the extent contemplated in the Stalking Horse APA (as defined in the DIP Financing Agreement)), the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens and security interests provided to the DIP Agent and the DIP Lenders by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except with respect to (a) the Permitted Priority Liens and (b) prior payment of the Carve-Out;

(iii)    until such time as all DIP Obligations are indefeasibly paid in full in cash (or credit solely (x) in the case of any Obligations owed to the Z Capital Lenders or their affiliates and (y) to the extent contemplated in the Stalking Horse APA), the Debtors shall not in any way or at any time permit to exist an administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses (a) on account of any break-up fee and expense reimbursement authorized to be paid to any person or entity (except for any Break-Up Fee secured by a Bid Protection Lien (as defined herein), if any), or (b) of the kind specified in, or arising or ordered under sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 of the Bankruptcy Code, that is superior to or

*pari passu* with the DIP Superpriority Claim (as defined below) provided herein, except with respect to prior payment of the Carve-Out;

(iv)    the Debtors have requested that the Prepetition Agents consent to, among other things, (a) the Debtors' use of Cash Collateral and the other Prepetition Collateral, (b) the incurrence of the DIP Term Loans by the Debtors and the Guarantors' guarantees of the DIP Term Loans under the DIP Loan Documents and (c) the Debtors' granting of the priming DIP Liens (as defined below) in connection therewith.  The Prepetition Agents and Prepetition Lenders are entitled, pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral (x) in exchange for their consent to allow the Debtors' use of such Prepetition Collateral, including the Cash Collateral, and (y) for any diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition Liens by the DIP Agent and DIP Lenders pursuant to this Interim Order, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, or otherwise;

(v)    as of the Petition Date, (a) the aggregate amount of the Prepetition First Lien Obligations and Prepetition Second Lien Obligations (collectively, the "Prepetition Indebtedness") is unconditionally owing by the Debtors; (b) the Prepetition Indebtedness is not subject to any avoidance, reductions, set-off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as set forth in paragraph 15 below;

(vi)    the Prepetition Liens constitute valid, binding, enforceable, and perfected liens with priority over any and all other liens (other than Permitted Priority Liens and any Bid Protection Lien (as defined herein)) and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity except as set forth in paragraph 15 below;

(vii)    any payments made on account of the Prepetition Indebtedness prior to the Petition Date were (a) payments out of the Prepetition Collateral, and/or (b) made in the ordinary course of business, and did not diminish any property otherwise available for distribution to unsecured creditors; and

(viii)    all of the Debtors' cash (but not, for the avoidance of doubt, any Good Faith Deposit (as defined in the DIP Financing Agreement)), including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral constitutes Cash Collateral of the Prepetition Agents.

I.    Cash Collateral.  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the DIP Agent or the Prepetition Agents have, for the benefit of the DIP Lenders or the Prepetition Lenders, respectively, a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise and shall include, without limitation:

(i)    all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any real or personal property, including insurance policies, in or on which the

Prepetition Lenders have a lien or a replacement lien, whether as part of the Prepetition Collateral (subject to paragraph 15 below) or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of this Chapter 11 Case, or arose or was generated thereafter;

(ii)    all of the respective deposits, refund claims and rights in retainers of the Debtors on which the Prepetition Agents hold a lien or replacement lien, whether as part of the Prepetition Collateral (subject to paragraph 15 below) or pursuant to an order of the Court or applicable law or otherwise; and

(iii)    the proceeds of any sale of DIP Collateral or Prepetition Collateral (subject to paragraph 15 below) in connection with any sale consummated prior to entry of the Final Order. For the avoidance of doubt, proceeds from the sale of any Avoidance Actions (as defined below) before entry of a Final Order shall not constitute Cash Collateral unless so determined by a further order of the Court.

J.    Adequate Protection. The Prepetition Agents and Prepetition Lenders are each entitled, pursuant to sections 361, 363(e), and 364(d)(1) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, in exchange for the Debtors' use of such Prepetition Collateral, to the extent of the diminution in value, if any, of the Prepetition Collateral, including, without limitation, any diminution in value resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition Liens of the Prepetition Agents on and in the Prepetition Collateral, for themselves and for the benefit of the Prepetition Lenders, by the DIP Agent or the DIP Lenders, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

K.    <u>Purpose and Necessity of Financing</u>.  The Debtors require the financing described in the Requested Relief to (i) permit the continuation of their businesses and preserve their going concern value through the consummation of a sale process, (ii) satisfy payroll obligations and other working capital and general corporate purposes of the Debtors consistent with the terms set forth in the DIP Loan Documents and the DIP Budget (as defined in paragraph 2 below) (subject to the Permitted Variance (as defined in the DIP Financing Agreement)) and (iii) pay fees and expenses related to the DIP Loan Documents and the Chapter 11 Cases.  If the Debtors do not obtain authorization to borrow under the DIP Financing Agreement, they will suffer immediate and irreparable harm.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on more favorable terms than those set forth in the DIP Loan Documents, based on the totality of the circumstances.  A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without granting the DIP Agent, for the benefit of the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Loan Documents.  After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time.

L.    <u>Good Cause Shown</u>.  Good cause has been shown for entry of this Interim Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtors' estates and creditors.  The liquidity to be provided under the DIP Loan Documents will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of the Debtors' assets.  Among other things, entry of this

Interim Order is necessary to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates, and, accordingly, is in the best interests of the Debtors, their estates and their creditors.

      M.     <u>Sections 506(c) And 552(b) Waivers</u>.  In light of (i) the DIP Agent's and the DIP Lenders' agreement to permit their DIP Liens and DIP Superpriority Claim (as defined below) to be subject to prior payment of the Carve-Out, and in exchange for and as a material inducement to the DIP Agent and DIP Lenders to agree to provide the DIP Facility and (ii) the Prepetition Agents' and the Prepetition Lenders' agreement to permit their Prepetition Liens, Replacement Liens (as defined below) and Adequate Protection Superpriority Claim (as defined below) to be subject to prior payment of the Carve-Out, the DIP Liens, and the DIP Superpriority Claim and to permit the use of their Cash Collateral for payments made in accordance with the DIP Budget (subject to the Permitted Variance) and the terms of this Interim Order, the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders are each entitled to (a) subject to entry of the Final Order, a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) subject to entry of the Final Order in the case of the Prepetition Agents and Prepetition Lenders, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

      N.     <u>Good Faith</u>.  The terms of the DIP Loan Documents, including, without limitation, the interest rates and fees applicable, and intangible factors relevant thereto, are more favorable to the Debtors than any available from alternative sources.  Based upon the record before the Court, the DIP Loan Documents have been negotiated in good faith and at arm's-length among the Debtors, the DIP Lenders, and the DIP Agent.  Any DIP Term Loans and other financial accommodations made to the Debtors by the DIP Agent and the DIP Lenders pursuant to the DIP Loan Documents and this Interim Order shall be deemed to have been extended by the

DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders shall be entitled to all protections afforded thereby.

O.    Fair Consideration and Reasonably Equivalent Value.  All of the Debtors have received and will receive fair and reasonable consideration in exchange for access to the DIP Term Loans and all other financial accommodations provided under the DIP Loan Documents and this Interim Order.  The extension of credit under the DIP Loan Documents is fair and reasonable, reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and is supported by reasonably equivalent value and fair consideration.

P.    Immediate Entry of Interim Order.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors.  This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful reorganization or sale of substantially all of their assets.  Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    Disposition.  The relief requested by the Debtors in the Motion and on the record at the Interim Hearing is granted on the terms set forth in this Interim Order.  Any objection to the interim relief sought by the Debtors that has not previously been withdrawn or resolved is

hereby overruled on its merits. The term of this Interim Order, the DIP Loan Documents, and the use of Cash Collateral authorized hereunder shall expire, and the DIP Term Loans made pursuant to this Interim Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Order by way of acceleration or otherwise) (a) on the 30th day after the date of entry of this Interim Order if the Final Order has not been entered by the Court prior to such date, or (b) upon the occurrence of the Termination Date (as defined in the DIP Financing Agreement).

### AUTHORIZATION FOR DIP FINANCING AND USE OF CASH COLLATERAL

2.      Authorization For DIP Financing And Use of Cash Collateral Pursuant to DIP Budget.

(a)      The Debtors are hereby authorized, on an interim basis, to incur DIP Obligations immediately subject to the terms of this Interim Order, the DIP Budget (subject to the Permitted Variance), and the DIP Loan Documents, in the aggregate principal amount of up to $~~3,000,000.00~~ 1,600,000.00 (the "Maximum Interim Borrowing"). Available financing and advances under the DIP Financing Agreement shall, on an interim basis, be made to fund, in accordance with the DIP Loan Documents and the DIP Budget (subject to the Permitted Variance), working capital and general corporate requirements of the Debtors, bankruptcy-related costs and expenses (including interest, fees, and expenses in accordance with this Interim Order or the DIP Loan Documents), and any other amounts required or allowed to be paid in accordance with this Interim Order, but only as and to the extent authorized by the DIP Budget (subject to the Permitted Variance) and the DIP Loan Documents.

(b)       Prior to the Termination Date, the Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in this Interim Order, the DIP Budget (subject to the Permitted Variance) and the DIP Loan Documents, without further approval by the Court.

(c)       The Debtors have delivered to the DIP Agent a detailed thirteen (13) week budget that sets forth projected cash receipts and cash disbursements (by line item) on a weekly basis for the time period from and including the Petition Date through the week ending November 4, 2018, a copy of which is attached hereto as Exhibit B (the "DIP Budget"). The DIP Budget shall at all times be in form and substance acceptable to the Required Lenders (as defined in the DIP Financing Agreement) (the "DIP Required Lenders") and approved in writing by the DIP Required Lenders, in their sole discretion. The Debtors shall provide updates to the DIP Budget and financial reporting with respect to the Debtors in accordance with the terms of the DIP Loan Documents. Funds borrowed under the DIP Financing Agreement and Cash Collateral used under this Interim Order shall be used by the Debtors in accordance with the DIP Budget (subject to the Permitted Variance), the DIP Loan Documents and this Interim Order. The consent of the DIP Required Lenders to any DIP Budget shall not be construed as a commitment to provide DIP Term Loans or to permit the use of Cash Collateral (subject to the Carve-Out) after the occurrence of the Termination Date under this Interim Order, regardless of whether the aggregate funds shown on the DIP Budget have been expended.

(d)       Any amendments, supplements or modifications to the DIP Budget must be consented to in writing by the DIP Required Lenders in their sole discretion prior to the implementation thereof and shall not require further notice, hearing, or court order; provided,

however, that the Debtors will provide written notice of any such amendment, supplement or modification to the Creditors' Committee.

(e)    The DIP Agent and the DIP Lenders (i) may assume the Debtors will comply with the DIP Budget (subject to the Permitted Variance), (ii) shall have no duty to monitor such compliance and (iii) shall not be obligated to pay (directly or indirectly from the DIP Collateral or Prepetition Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to any DIP Budget.  All advances and extensions of credit shall be based upon the terms and conditions of the DIP Loan Documents, as the same may be adjusted from time to time.

3.    Authorization For Use of Cash Collateral Pursuant to Wind-Down Budget

(a)    Prior to the Termination Date, the Prepetition Lenders and the Debtors shall endeavor to negotiate in good faith a budget setting forth the projected cash receipts and cash disbursements (by line item) on a weekly basis from the time period from and including the Termination Date and the effective date of a Chapter 11 plan  (the "Wind-Down Budget") and plan milestones ("Plan Milestones"), which Wind-Down Budget and Plan Milestones shall be reasonably acceptable to the Debtors and the Prepetition Lenders and filed with the Court.

(b)    Upon filing the Wind-Down Budget with the Court, subsequent to the Termination Date, the Debtors shall be authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in the Wind-Down Budget, without further approval by the Court.

(c)    The Wind-Down Budget shall at all times be in form and substance acceptable to the Prepetition Lenders and approved in writing by the Prepetition Lenders, in their reasonable discretion.  The Debtors shall provide updates to the Wind-Down Budget and financial reporting with respect to the Debtors, substantially similar to the updates and reporting required for the

DIP Budget under the terms of the DIP Loan Documents. The consent of the Prepetition Lenders to any Wind-Down Budget shall not be construed as a commitment to permit the use of Cash Collateral (subject to the Carve-Out) upon a breach of the Wind-Down Budget or Plan Milestones, regardless of whether the aggregate funds shown on the Wind-Down Budget have been expended.

(d)     Any amendments, supplements or modifications to the Wind-Down Budget must be consented to in writing by the Prepetition Lenders in their sole discretion prior to the implementation thereof and shall not require further notice, hearing, or court order.

(e)     The Prepetition Agent and the Prepetition Lenders (i) may assume the Debtors will comply with the Wind-Down Budget (subject to an agreed-upon variance), (ii) shall have no duty to monitor such compliance and (iii) shall not be obligated to pay (directly or indirectly from the Prepetition Collateral or proceeds thereof) any unpaid expenses incurred or authorized to be incurred pursuant to any Wind-Down Budget.

4.     <u>Authority to Execute and Deliver Necessary Documents</u>.

(a)     Each of the Debtors is authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, in each case including any amendments thereto. Each of the Debtors is further authorized to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents or agreements encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Loan Documents, each as may be reasonably requested by the DIP Required Lenders.

(b)     Each of the Debtors is further authorized to (i) perform all of its obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan

Documents to give effect to the terms of the financing provided for therein and in this Interim Order, and (ii) perform all acts required under the DIP Loan Documents and this Interim Order.

5.     Valid and Binding Obligations.  All obligations under the DIP Loan Documents shall constitute valid, binding, and nonavoidable obligations of each of the Debtors, enforceable against each of them and each of their successors and assigns, in accordance with their terms and the terms of this Interim Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

6.     Termination of DIP Loan Documents.  Notwithstanding anything in this Interim Order to the contrary, the DIP Loan Documents shall expire, and the DIP Term Loans made pursuant to this Interim Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Order by way of acceleration or otherwise) on the Termination Date (as defined in the DIP Financing Agreement).

7.     Authorization for Payment of DIP Financing Fees and Expenses.  All fees paid and payable, and all costs and/or expenses reimbursed or reimbursable (including, without limitation, the Closing Fee, the Loan Servicing Fee, and all other fees, costs and expenses referred to in the DIP Loan Documents and the DIP Agent's  and DIP Lenders' attorneys' fees

and expenses), under the DIP Loan Documents, by the Debtors to the DIP Agent are hereby approved and shall not be subject to disgorgement by any party for any reason. The Debtors are hereby authorized to pay all such fees, costs, and expenses (including, without limitation, the Closing Fee and the Loan Servicing Fee) in accordance with the terms of the DIP Loan Documents and this Interim Order, without any requirement that the Debtors, the DIP Agent, the DIP Lenders, or any of their counsel file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs, or expenses. The Debtors shall pay all reasonable and documented prepetition and postpetition out of pocket costs and expenses of the DIP Agent and the DIP Lenders, including all reasonable and documented fees, expenses and disbursements of one primary counsel and one local counsel for the DIP Agent and one primary counsel and one local counsel for each DIP Lender (as set forth in the DIP Loan Documents), and consultants, incurred in connection with the Debtors, their Chapter 11 Cases and any Successor Case(s) (as defined below), including, without limitation, for (a) preparation, execution, and delivery of the DIP Loan Documents, this Interim Order, and any Final Order, and the funding of all DIP Term Loans under the DIP Facility; (b) the administration of the DIP Facility and any amendment or waiver of any provision of the DIP Loan Documents, this Interim Order, and any Final Order; and (c) the enforcement or protection of any of their rights and remedies under the DIP Loan Documents, this Interim Order, and any Final Order. Notwithstanding anything to the contrary herein, the foregoing fees, costs and expenses of the DIP Agent and the DIP Lenders authorized by this Interim Order, whether incurred prior to or after the Petition Date, including, without limitation, all fees referred to in the DIP Loan Documents, shall be deemed fully earned, non-refundable, and irrevocable as of the date of this Interim Order. None of the DIP Agent's or DIP Lenders' attorneys, financial advisors and

accountants' fees and disbursements shall be subject to the prior approval of this Court, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Any such fees, costs and expenses shall be evidenced by a summary invoice (redacted, as necessary, to protect any applicable privilege) and delivered to the Debtors and the Office of the United States Trustee for this region (the "U.S. Trustee"). The U.S. Trustee shall have ten (10) days from the date of such delivery within which to object in writing to such payment. Following the expiration of such period, the applicable counsel shall notify the Debtors in writing of the expiration of such period and the absence of any objection by the U.S. Trustee, and the Debtors shall pay such invoice within five (5) business days of such written notice, without the need for further application to or order of the Court. In the event that, within such period, the U.S. Trustee raises an objection to a particular invoice, the applicable counsel shall notify the Debtors in writing of the objection and the Debtors shall pay the fees and expenses not subject to the objection within five (5) business days of such written notice, without the need for further application to or order of the Court.

8.    <u>Amendments, Consents, Waivers, and Modifications</u>. The Debtors, with the express written consent of the DIP Agent at the direction of the DIP Required Lenders, may enter into any non-material amendments, consents, waivers or modifications to the DIP Loan Documents without the need for further notice and hearing or any order of this Court.

<b><u>DIP LIENS AND DIP SUPERPRIORITY CLAIMS</u></b>

9.    <u>DIP Liens</u>

(a)    To secure the DIP Obligations, the DIP Agent is hereby granted for the benefit of itself and the DIP Lenders (i) pursuant to section 364(c)(2), a perfected first-priority lien on the DIP Collateral (as defined below) to the extent that such DIP Collateral was not subject to valid,

perfected and non-avoidable liens as of the Petition Date; (ii) pursuant to section 364(c)(3), a perfected lien on the DIP Collateral junior to any Permitted Priority Liens[4] on such DIP Collateral, and (iii) pursuant to section 364(d) of the Bankruptcy Code, a perfected first-priority, priming and senior security interest and lien on the DIP Collateral subject to any Permitted Priority Lien ((i)-(iii) collectively, the "DIP Liens").

(b)     The DIP Liens shall attach to all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, all of each Debtor's now owned or hereafter acquired right, title, and interest in and to: (w) all of the property, assets or interests in property or assets of each Debtor and all "property of the estate", including the Prepetition Collateral; (x) the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any money or other tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof; (y) all other property and assets including, without limitation, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above; and (z) proceeds of avoidance actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions", and collectively with (w)-(y), the "DIP Collateral"), subject only to (A) the Permitted Priority Liens, and (B) prior payment of the Carve-Out; provided, however, that DIP Collateral shall not include any Good Faith Deposit nor that certain Certificate of Deposit #2239406347 for $200,000

---

[4] "Permitted Priority Liens" means valid, enforceable, non-avoidable and perfected liens in existence on the Petition Date (including valid liens in existence on the Petition Date that are perfected after the Petition Date as permitted by § 546(b) of the Bankruptcy Code) that are senior in priority to the Prepetition First Priority Liens.

(maturity 12/16/2016, on auto-renew every 12 months) deposited by RM Opco LLC and held by Wells Fargo Bank, N.A.  Notwithstanding the foregoing:  (i) Avoidance Actions shall not constitute DIP Collateral; (ii) proceeds of or property recovered or otherwise resulting from the successful prosecution or settlement of any Avoidance Actions ("Avoidance Action Proceeds") shall not constitute DIP Collateral until after the entry of a Final Order; and (iii) DIP Collateral shall include the proceeds of real property leases, but not liens on the leases themselves except to the extent permitted by the terms of the applicable lease.

(c)    The DIP Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than (i) the Permitted Priority Liens; and (ii) prior payment of the Carve-Out.

(d)    The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order, without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments, such that no additional actions need be taken by the DIP Agent or the DIP Lenders to perfect such interests.  Subject to and without limiting the provisions in 9(b) above, any provision of any loan document, license, contract, easement, use agreement, proffer, covenant, organizational document, or other instrument or agreement (and for clarity, expressly excluding any non-residential lease of real property) that requires the consent or approval of one or more licensors, other parties or any non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold or the proceeds thereof or other collateral interest, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code,

and shall have no force or effect with respect to the transactions granting the DIP Agent, for the benefit of itself and the DIP Lenders, a security interest in such fee, leasehold or other interest or other collateral (again for clarity excluding any non-residential lease of real property) or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors in favor of the DIP Agent, for the benefit of itself and the DIP Lenders, in accordance with the terms of the DIP Financing Agreement and the other DIP Loan Documents.

 (e) That certain Deposit Account Control Agreement (the "Control Agreement"), dated as of May 17, 2012, entered into by and among Opco, the Prepetition First Lien Agent, the Prepetition Second Lien Agent and Wells Fargo Bank, National Association as depository bank (the "Bank"), shall inure to the benefit of the DIP Agent and the DIP Lenders. The Bank shall comply with instructions given to the Bank by the DIP Agent without further consent by Opco, the Prepetition First Lien Agent, the Prepetition Second Lien Agent or any other third party. This Interim Order hereby amends the Control Agreement so that the DIP Agent shall be an "Agent" as defined therein and that "Controlling Agent" shall mean the DIP Agent until such time as the Bank receives written notice from the DIP Agent otherwise.

 10. DIP Lenders' Superpriority Claim. The DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted an allowed superpriority administrative expense claim (the "DIP Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Debtors' Chapter 11 Cases and in any successor case(s) under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy Code, the "Successor Case(s)") for all DIP Obligations, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330,

331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof including, without limitation but subject to entry of a Final Order, any Avoidance Actions Proceeds.  The DIP Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to prior payment of the Carve-Out.  Except as referenced in this Interim Order (including with respect to any Break-Up Fee), no other superpriority claims shall be granted or allowed in these Chapter 11 Cases or in any Successor Case(s).  The DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in these Chapter 11 Cases including, without limitation, on account of any break-up fee or expense reimbursement that may be granted by the Court in connection with any sale of the Debtors' assets, and the Adequate Protection Superpriority Claim.

11.    <u>Survival of DIP Liens and DIP Superpriority Claim</u>.    The DIP Liens, DIP Superpriority Claim, and other rights and remedies granted under this Interim Order to the DIP Agent, for the benefit of itself and the DIP Lenders, shall continue in this and any Successor Case(s) and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and/or upon the dismissal of any or all of the Debtors' Chapter 11 Cases or any Successor Case(s) and such liens and security interests shall maintain their priority as provided in this Interim Order until all the DIP Obligations have been indefeasibly paid in full in cash (or credit solely (x) in the case of any Obligations owed to the Z Capital Lenders or their

affiliates and (y) to the extent contemplated in the Stalking Horse APA) and the DIP Lenders' commitments have been terminated in accordance with the DIP Loan Documents.

## ADEQUATE PROTECTION FOR CASH COLLATERAL USE

12.     Adequate Protection for Prepetition Agents and Lenders.  As adequate protection for any diminution in the value of the Prepetition Collateral resulting from the incurrence of the DIP Obligations, the use of Cash Collateral, the granting of DIP Liens and the agreement of the Prepetition Agents and Prepetition Lenders to subordinate their right to receive payment from the proceeds of Prepetition Collateral to the prior payment of the Carve-Out, or otherwise (collectively, the "Diminution Claim"), the Prepetition Agents (on behalf of the Prepetition Lenders) are hereby granted (in each case subject to the DIP Liens, the DIP Superpriority Claim, and prior payment of the Carve-Out) the following adequate protection:

(a)     Adequate Protection Liens.  Subject to paragraph 15, to secure the Diminution Claim, the Prepetition Agents, for themselves and for the benefit of the Prepetition Lenders, are hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) valid, perfected, postpetition security interests and liens (the "Replacement Liens") in and on all of the DIP Collateral, provided, however, that the Replacement Liens shall only be and remain subject and subordinate to (i) the DIP Liens and/or payment of any DIP Obligations on account thereof, (ii) the Permitted Priority Liens, (iii) any lien granted to secure payment of the Break-Up Fee in the Stalking Horse APA to the extent approved by the Court (a "Bid Protection Lien") and/or payment of such break-up fee to the extent due and owing under the Stalking Horse APA (the "Break-Up Fee")[5], and (iv) prior

---

[5]     For the avoidance of doubt, entry of this Interim Order shall not constitute Court approval of any Bid Protection Lien or Break-Up Fee and any such bid protections shall be subject to a Final Order of the Court.

payment of the Carve-Out. The Replacement Liens shall maintain their priority relative to the Prepetition Liens as set forth in the Intercreditor Agreement, Subordination Agreement, Prepetition First Lien Financing Agreement and Prepetition Second Lien Financing Agreement.

(b)      Adequate Protection Superpriority Claims. Subject to paragraph 15 and as further adequate protection for the Diminution Claim to the extent the Adequate Protection Liens are insufficient to protect the Prepetition Lenders on account of their Diminution Claim, the Prepetition Agents and the Prepetition Lenders are hereby granted a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "Adequate Protection Superpriority Claim"), which allowed Adequate Protection Superpriority Claim shall be payable from all pre- and postpetition property of the Debtors and all proceeds thereof including, without limitation but subject to and upon entry of the Final Order, any Avoidance Action Proceeds. The Adequate Protection Superpriority Claim shall be subordinate and subject only to the DIP Superpriority Claim, prior payment of the Break-Up Fee, to the extent payable under the Stalking Horse APA, and prior payment of the Carve-Out. The Adequate Protection Superpriority Claim shall maintain its priority relative to the Prepetition Indebtedness as set forth in the Intercreditor Agreement and Subordination Agreement, Prepetition First Lien Financing Agreement and Prepetition Second Lien Financing Agreement.

(c)      Prepetition Lenders and Prepetition Agents Legal Fees and Expenses. The Prepetition Lenders and Prepetition Agents shall each receive from the Debtors payment of all

reasonable and documented outstanding fees and expenses (the "Prepetition Fee Payments"), including, but not limited to, fees and expenses of legal counsel, incurred by the Prepetition Lenders and Prepetition Agents, to the extent provided for under the Prepetition First Lien Loan Documents and Prepetition Second Lien Loan Documents. The payment of all invoiced outstanding fees and expenses as of the Petition Date shall be a condition to funding of any portion of the Initial DIP Term Loan. The Prepetition Fee Payments are hereby approved and shall not be subject to disgorgement by any party for any reason.

(d)    As additional adequate protection, the Prepetition Agents and Prepetition Lenders shall be entitled to the additional benefits set forth in this Interim Order, including paragraphs 14 (Restrictions on Use of Funds); 15 (Challenge Period); 17 (Estate Release); 20 (Section 506(c) Waiver Upon Entry of Final Order); 21 (No Marshaling); 22 (Equities of the Case Waiver Upon Entry of Final Order); and 35 (Sales Milestones).

(e)    Consent to Priming and Adequate Protection. The Prepetition Agents and the Prepetition Lenders consent to the Debtors' use of Cash Collateral and the priming provided for herein; provided, however, that such consent to the priming, the use of Cash Collateral, and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Interim Order relating to the DIP Loan Documents and DIP Term Loans set forth herein, and such consent shall not be deemed to extend to any replacement or other debtor in possession financing other than the DIP Term Loans provided under the DIP Loan Documents; and provided, further, that such consent shall be of no force and effect in the event this Interim Order is not entered and the DIP Loan Documents and DIP Term Loans as set forth herein are not approved.

## CARVE-OUT; RESTRICTIONS ON USE OF FUNDS

13.    Carve-Out.

(a)    The DIP Liens, the DIP Superpriority Claim, the Replacement Liens, the Adequate Protection Superpriority Claims and the Prepetition Liens shall be subject and subordinate only to prior payment of: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), in such amounts as determined in agreement with the U.S. Trustee or by a Final Order of the Court, and fees payable to the Clerk of the Court (the "Case Administration Fees"), (ii) unpaid professional fees and expenses payable to any legal or financial advisors retained by the Debtors (the "Debtors' Professional Fees") or any Creditors' Committee (the "Committee's Professional Fees" and, collectively, the "Professional Fees") that are incurred or accrued prior to the date on which the DIP Agent provides written notice to the Debtors and the Creditors' Committee of the occurrence of the Termination Date, but solely if, as and to the extent such Professional Fees are or have been provided for in, and are consistent with, the DIP Budget (subject to the Permitted Variance) and are ultimately allowed by the Court pursuant to section 330 of the Bankruptcy Code, and (iii) unpaid (x) Debtors' Professional Fees incurred or accrued on or after the date on which the DIP Agent provides written notice to the Debtors of the occurrence of the Termination Date in an aggregate amount not to exceed $200,000.00 and (y) Committee's Professional Fees incurred or accrued on or after the date on which the DIP Agent provides written notice to the Creditors' Committee of the occurrence of the Termination Date in an aggregate amount not to exceed $25,000.00 (clauses (i), (ii) and (iii), collectively, the "Carve-Out" and, clause (iii) alone, the "Capped Carve-Out").  Subject to the immediately preceding sentence, so long as the Termination Date has not occurred, the Debtors shall be permitted to pay Case Administration Fees and Professional Fees allowed and payable under Bankruptcy Code

sections 330, 331 and 503, as provided in the DIP Loan Documents and the DIP Budget (subject to the Permitted Variance). Any payment of Carve-Out expenses incurred after the occurrence of the Termination Date, including any payment of Professional Fees, shall permanently reduce the Capped Carve-Out on a dollar-for-dollar basis. Without limiting the generality of the foregoing, the Carve-Out shall not include, apply to, or be available for any success fee or similar payment to any professionals or other persons, including without limitation any such fee payable in connection with a restructuring or asset disposition with respect to any of the Debtors or otherwise unless otherwise agreed to by the DIP Agent, at the direction of the DIP Required Lenders, in writing.

(b)   Nothing contained in this Interim Order shall be construed: (i) to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Court-approved procedure from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, and/or (ii) as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of the DIP Agent or the DIP Lenders to object to the reasonableness of such amounts.

14.   <u>Restrictions on Use of Funds</u>. Notwithstanding anything in this Interim Order or the DIP Loan Documents to the contrary, no proceeds of the DIP Facility, any DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out may be used to pay any claims for services rendered by any professionals retained by the Debtors, any creditor or party in interest, any Creditors' Committee, any trustee appointed under these Chapter 11 Cases or any Successor Case(s), or any other party to (a) request

authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise, other than from the DIP Agent or DIP Lenders, unless the proceeds of such loans or accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash (or credit solely (x) in the case of any Obligations owed to the Z Capital Lenders or their affiliates and (y) to the extent contemplated in the Stalking Horse APA) all DIP Obligations, the Prepetition Indebtedness, and the adequate protection obligations set forth in paragraph 12 or (b) investigate (except as set forth in paragraph 15 below), assert, join, commence, support or prosecute any action or claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders (in their respective capacities as such), or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors (in their respective capacities as such), with respect to any transaction, occurrence, omission, or action related to the DIP Liens, the DIP Indebtedness, the Prepetition Liens or the Prepetition Indebtedness, including, without limitation, (i) any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (ii) any action relating to any act or omission related to, or aspect of, the relationship between or among any of the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders (in their respective capacities as such), on the one hand, and the Debtors or any of their affiliates, on the other; (iii) any action with respect to the validity and extent of the DIP Obligations or the Prepetition Indebtedness, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens or the Replacement Liens; (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens, the Prepetition Liens or the Replacement Liens; (v) any action that has the effect

of preventing, hindering or delaying (whether directly or indirectly) the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders in respect of the enforcement of their liens and security interests in the DIP Collateral, Cash Collateral or the Prepetition Collateral; (vi) pay any Claim of a Creditor (as such terms are defined in the Bankruptcy Code) without the prior written consent of the DIP Agent or the Prepetition Agents (at the direction of the "Required Lenders", in each case, as defined in the Prepetition Loan Documents) (except as permitted by the DIP Budget (subject to the Permitted Variance)); and/or (vii) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby or by the DIP Loan Documents, without the consent of the DIP Required Lenders. Notwithstanding the foregoing, up to $25,000.00 in the aggregate of the DIP Facility, DIP Collateral, Cash Collateral, Prepetition Collateral and Carve-Out may be used by a Creditors' Committee to investigate the Prepetition Indebtedness, the Prepetition Liens and/or claims against the Releasees prior to the Challenge Period Termination Date (as each is defined below).

15.    Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

(a)    The Debtors' acknowledgements and stipulations set forth in paragraphs D, E, H and I above (the "Debtors' Stipulations") shall be binding upon the Debtors upon entry of this Interim Order; provided, however, that the Debtors shall be permitted to share information with the Creditors' Committee upon a request therefor by the Creditors' Committee in connection with the investigation of claims against the Releasees, be permitted to use the proceeds DIP Loans, DIP Collateral and Cash Collateral to pay any Debtors' Professional Fees incurred in connection therewith.  The Debtors' Stipulations shall be binding upon each other party in interest, including the Creditors' Committee, if any, unless such Creditors' Committee or any other party in interest having standing other than the Debtors (or if the Chapter 11 Cases are

converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined

below), the chapter 7 trustee in such Successor Case(s)), first, commences, by the earlier of (x)

with respect to any Creditors' Committee, sixty (60) calendar days from the formation of any

Creditors' Committee, and (y) with respect to other parties in interest with requisite standing

other than the Debtors or any Creditors' Committee, seventy-five (75) calendar days following

the date of entry of the Interim Order (such time period established by the earlier of clauses (x)

and (y), shall be referred to as the "Challenge Period," and the date that is the next calendar day

after the termination of the Challenge Period in the event that either (i) no Challenge (as defined

below) is properly raised during the Challenge Period or (ii) with respect only to those parties

who properly file a Challenge, such Challenge is fully and finally adjudicated, shall be referred

to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding, or

other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting

to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, or (B)

a contested matter, adversary proceeding, or other action against any or all of the Prepetition

Agents or the Prepetition Lenders in connection with or related to the Prepetition Indebtedness,

or the actions or inactions of any of the Prepetition Agents or the Prepetition Lenders arising out

of or related to the Prepetition Indebtedness or otherwise, including, without limitation, any

claim against the Prepetition Agents or any or all of the Prepetition Lenders in the nature of a

"lender liability" cause of action, setoff, counterclaim, or defense to the Prepetition Indebtedness

(including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of

the Bankruptcy Code (in each case including a contested matter, adversary proceeding, or other

action or "claim" brought derivatively on behalf of one or more Debtors' estates but excluding,

solely for the purpose of this Interim Order, those under 506(c)) ((A) and (B) collectively, the

"Challenges" and, each individually, a "Challenge"), and second, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action.

(b)    Upon the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any Successor Case(s), (i) all payments made to or for the benefit of the Prepetition Agents or the Prepetition Lenders pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred, (iii) the Prepetition Indebtedness shall be deemed to be a fully allowed and fully secured claim within the meaning of section 506 of the Bankruptcy Code, and (iv) the Debtors' Stipulations in paragraphs D, E, H and I and the releases in paragraph 17 shall be binding on all parties in interest, including any Creditors' Committee.

16.    Prohibition on Granting of Additional Liens and Interests.  No liens, claims, interests or priority status, other than the Carve-Out, the Permitted Priority Liens or any Bid Protection Lien or Break-Up Fee, if any, having a lien or administrative priority superior to, *pari passu* with, or junior to that of the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Superpriority Claims, or the Replacement Liens granted by this Interim Order, shall be granted while any portion of the DIP Obligations remain outstanding, or any commitment under the DIP Loan Documents remains in effect, without the prior written consent of the DIP Lenders.

17.    Release.    The release, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph 17 shall be deemed effective upon entry of the Interim

Order, and subject only to the rights set forth in paragraph 15 above. The Debtors forever and irrevocably (a) release, discharge, and acquit the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders (in their respective capacities as such), and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and successors and predecessors in interest (in their respective capacities as such) (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship among the DIP Agent, the DIP Lenders or the Prepetition Lenders or the Prepetition Agents (in their respective capacities as such) and the Debtors and their affiliates including any equitable subordination or recharacterization claims or defenses, with respect to or relating to the DIP Obligations, the DIP Liens, the DIP Loan Documents, Prepetition Indebtedness, the Prepetition Liens, the Prepetition Loan Documents, the Debtors' attempts to restructure the Prepetition Indebtedness, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the DIP Obligations, the DIP Liens, the Prepetition Indebtedness and the Prepetition Liens.

## OBLIGATION OF DIP LENDERS WITH RESPECT TO DELAYED DRAW DIP TERM LOANS

18.     Each of the DIP Lenders is obligated to use its reasonable best efforts to establish and maintain the Segregated Pre-Funding Account (as defined in the DIP Financing Agreement) and deposit its Delayed Draw DIP Term Loan into the Segregated Pre-Funding Account as soon as reasonably practicable following entry of this Interim Order. If for any reason the Segregated Pre-Funding Account is not established and funded with the entire remaining amount of the DIP Lenders' aggregate DIP Term Loan Commitments prior to entry of the Final Order, each DIP Lender is ordered to extend and disburse the Delayed Draw DIP Term Loans directly to the Borrower in accordance with the terms of the DIP Financing Agreement.

## REMEDIES; MODIFICATION OF AUTOMATIC STAY

19.     Remedies and Stay Modification.

(a)     The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified without further application or motion to, or order from, the Court, to the extent necessary so as to permit the following, and neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable):

(i)     whether or not a Default or an Event of Default under the DIP Loan Documents or a default by any of the Debtors of any of their obligations under this Interim Order has occurred (A) to require all cash, checks or other collections or proceeds from DIP Collateral received by any of the Debtors to be deposited in accordance with the requirements of the DIP Loan Documents, and to apply any amounts so deposited and other amounts paid to or received by the DIP Agent and the DIP Lenders under the DIP Loan Documents in accordance with any

requirements of the DIP Loan Documents, (B) the right to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (C) the right to charge and collect any interest, fees, costs and other expenses accruing at any time under the DIP Loan Documents as provided therein, and (D) the right to give the Debtors any notice provided for in any of the DIP Loan Documents or this Interim Order;

   (ii) Subject to subparagraph (a)(iv) below, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified without the need for further Court order to permit the DIP Agent, for itself and on behalf of the DIP Required Lenders, at the direction of the DIP Required Lenders, or the DIP Lenders, as applicable, upon the occurrence and during the continuance of an Event of Default, and without any interference from the Debtors or any other party in interest but subject to five (5) business days' prior written notice (which may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, their counsel, counsel to any Creditors' Committee and the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Loan Documents, this Interim Order or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to (A) cease making DIP Term Loans and/or suspend or terminate the commitments under the DIP Loan Documents; (B) declare all DIP Obligations immediately due and payable; (C) take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; (D) foreclose or otherwise enforce the DIP Liens on any or all of the DIP Collateral; (E) set off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Agent and DIP Lenders); and/or (F) exercise any other default-related rights and remedies under the under the DIP Loan Documents or this Interim

Order. The Remedies Notice Period shall run concurrently with any notice period provided for under the DIP Loan Documents.

(iii)    Immediately upon the occurrence of the Termination Date or a default by any of the Debtors of any of their obligations under this Interim Order, the DIP Agent, for itself and the benefit of the DIP Lenders, may charge interest at the default rate set forth in the DIP Loan Documents without being subject to the Remedies Notice Period.

(iv)    The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Creditors' Committee, if any, and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period. The Debtors, the Creditors' Committee, if any, and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to reimpose or continue the automatic stay of section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief.

(v)    If the DIP Required Lenders are entitled, and have elected in accordance with the provisions hereof, to direct the DIP Agent to enforce the DIP Liens or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors shall cooperate with the DIP Agent or the DIP Required Lenders in connection with such enforcement by, among other things, (A) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Agent or the DIP Required Lenders (including any collateral liquidator or consultant), (B) providing the DIP Agent or the DIP Required Lenders and their representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the DIP Agent or the DIP Required Lenders or their respective representatives, (C) performing all other obligations set forth in the DIP Loan

Documents, and (D) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Agent's or the DIP Required Lenders' enforcement of rights.

(vi)    Upon the occurrence and during the continuance of a Default or an Event of Default under the DIP Loan Documents, a violation of the terms of or an event of default under this Interim Order, or occurrence of the Termination Date, and except as otherwise provided in the DIP Loan Documents with respect to the Remedies Notice Period, (A) the DIP Agent, at the direction of the DIP Required Lenders, shall, subject to the Carve-Out, have no further obligation to provide financing under the DIP Loan Documents and (B) the DIP Agent and the Prepetition Agents, at the direction of the DIP Required Lenders and the Prepetition Lenders, shall, subject to the Carve-Out, have no further obligation to permit the continued use of Cash Collateral.

(vii)    Upon the occurrence and during the continuance of a Default or an Event of Default under the DIP Loan Documents, a violation of the terms of this Interim Order, or occurrence of the Termination Date, the DIP Agent (at the direction of the DIP Required Lenders) may at all times continue to collect and sweep cash as provided herein or as provided in the DIP Loan Documents.

(viii)    Upon the occurrence and during the continuance of an Event of Default, the DIP Agent (at the direction of the DIP Required Lenders) shall have the sole right, in the name of the DIP Lenders and any Debtor, to file claims under any insurance policies, to receive, receipt and give acquittance for any payments that may be payable thereunder, and to execute any and all endorsements, receipts, releases, assignments, reassignments or other documents that may be necessary to effect the collection, compromise or settlement of any claims under any

39

such insurance policies. All policies covering the DIP Collateral shall be made payable to the DIP Agent for the benefit of the DIP Agent and the DIP Lenders, as its interests may appear, in case of loss, under a standard non-contributory "lender" or "secured party" clause and any payments to be made under such policies shall be made payable to the DIP Agent for the benefit of the DIP Agent and the DIP Lenders, as its interests may appear.

(ix)    This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of section 362(a) of the Bankruptcy Code or other injunctive relief requested.

## MISCELLANEOUS

20.    Limitation on Section 506(c) Claims. Subject to entry of the Final Order and as additional adequate protection for the use of Cash Collateral, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Case(s) at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against, the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Lenders, or any of their respective claims, the Carve-Out, or the DIP Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent, as applicable, of the DIP Agent (at the direction of the DIP Required Lenders). No action, inaction or acquiescence by the DIP Agent or the DIP Lenders shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Agent or the DIP Lenders, any of their respective claims, the Carve-Out, or the DIP Collateral.

21.    No Marshaling. Subject to entry of the Final Order, the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral

or the Prepetition Collateral. Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral after an Event of Default under the DIP Loan Documents, or termination or breach under the DIP Loan Documents.

22.    <u>Equities of the Case Waiver</u>. Subject to entry of the Final Order, the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and (b) no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders with respect to proceeds, product, offspring or profits of any of the DIP Collateral or the Prepetition Collateral.

23.    <u>Additional Perfection Measures</u>. The DIP Liens and the Replacement Liens shall be perfected by operation of law immediately upon entry of this Interim Order. None of the Debtors, the DIP Agent, the Prepetition Agents or the Prepetition Lenders shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the DIP Liens or the Replacement Liens.

(a)    If the DIP Agent, at the direction of the DIP Required Lenders, in their sole discretion, chooses to take any action to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens, the DIP Agent is hereby authorized, but not directed, at the direction of the DIP Required Lenders, to take such action or to request that the Debtors take such action on its behalf (and the Debtors are hereby authorized and directed to take such action) and:

(i)    any such documents or instruments shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

(ii)    no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)    In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Agent may, at the direction of the DIP Required Lenders, in their sole discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of the Collateral, and such filing by the DIP Agent shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

24.    <u>Application of Collateral Proceeds</u>.  To the extent required by this Interim Order and the DIP Loan Documents, after an Event of Default, the Debtors are hereby authorized and directed to remit to the DIP Agent, subject to the payment of or reserve for the Carve-Out, one-hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit

the DIP Agent or the DIP Lenders to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Loan Documents. In furtherance of the foregoing:

(a)    all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial institution shall be subject to a perfected, first priority security interest in favor of the DIP Agent (or its designee);

(b)    upon the occurrence of the Termination Date and the expiration of the Remedies Notice Period, each bank or other financial institution with an account of any Debtor is hereby authorized and instructed to: (i) comply at all times with any instructions originated by the DIP Agent (or its designee) to such bank or financial institution directing the disposition of cash, securities, investment property and other items from time to time credited to such account, without further consent of any Debtor, including, without limitation, any instruction to send to the DIP Agent (or its designee) by wire transfer (to such account as the DIP Agent (or its designee) shall specify, or in such other manner as the DIP Agent (or its designee) shall direct) all such cash, securities, investment property and other items held by it; and (ii) waive any right of set off, banker's lien or other similar lien, security interest or encumbrance as against the DIP Agent (or its designee);

(c)    any deposit account control agreement executed and delivered by any bank or other financial institution, any Debtor and the DIP Agent in connection with the DIP Loan Documents shall establish control in favor of the DIP Agent of any and all accounts subject thereto and any and all cash, securities, investment property and other items of any Debtor deposited therein to secure the DIP Obligations; and

(d)    any deposit account control agreement executed and delivered by any bank or other financial institution, any Debtor and the Prepetition Agents prior to the Petition Date in connection with the Prepetition Loan Documents shall establish co-control in favor of the DIP Agent of any and all accounts subject thereto and any and all cash, securities, investment property and other items of any Debtor deposited therein to secure the DIP Obligations (provided that primary control rights shall vest in the DIP Agent), and all rights thereunder in favor of the Prepetition Agents shall inure also to the benefit of, and shall be exercisable exclusively by, the DIP Agent, until all of the DIP Obligations have been indefeasibly paid in full, at which time exclusive control shall automatically revert to the Prepetition Agent.

25.    Access to Collateral.

(a)    *Access to Collateral (Other Than Real Estate Leases)*.  Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the DIP Lenders contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon three (3) business days' written notice to the lienholder, licensor or other third party owner of any leased personal property, licensed property or intellectual property that an Event of Default under the DIP Loan Documents, or a default by any of the Debtors of any of their obligations under this Interim Order has occurred and is continuing or that the Termination Date has occurred, the DIP Agent, at the direction of the DIP Required Lenders, shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable lease or license and to use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are

used by the Debtors in their businesses, without interference from lienholders or licensors thereunder, subject to such lienholders' or licensors' rights under applicable law.

(b)    *Access to Leased Real Property.*  The rights of the DIP Agent or the DIP Lenders to enter onto the Debtors' leased premises shall be limited to (i) any such rights agreed in writing by the applicable landlord pursuant to any separate agreement by and between such landlord and the DIP Agent or the DIP Lenders, (ii) the rights the DIP Agent or the DIP Lenders have under applicable non-bankruptcy law, if any, and (iii) such rights as may be granted by the Court on a separate motion with notice to the applicable landlords of the leased premises and an opportunity for such landlords to respond and be heard.

(c)    For the avoidance of doubt, (i) the DIP Required Lenders shall pay only rent and ~~related~~ all other monthly obligations (including insurance, CAM, taxes and all reconciliations as they come due as required under the applicable lease) of the Debtors accruing during the period of such occupancy or use by the DIP Agent or the DIP Lenders, as the case may be, calculated on *a per diem* basis and (ii) nothing herein shall require the Debtors, the DIP Agent or the DIP Lenders to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent and the DIP Lenders in this paragraph.

26.    Cash Management Systems.  The Debtors are authorized to maintain their cash management system in a manner consistent with the DIP Loan Documents, this Interim Order, and any order of this Court approving the maintenance of the Debtors' cash management system, provided, however, that such order is and remains at all times on terms and conditions acceptable to the DIP Required Lenders and such order is not inconsistent with the terms specified herein or the DIP Loan Documents, and, after the Termination Date and the repayment of the DIP Obligations in full, on terms and conditions acceptable to the Prepetition Lenders.  For the

avoidance of doubt, nothing in this Interim Order shall have the effect of modifying or superseding the terms of any uniform depository agreement to which the Debtors' bank(s) are a party.

27.    <u>Delivery of Documentation.</u>  The Debtors (and/or their legal or financial advisors) shall deliver to the DIP Agent, counsel to the DIP Lenders, and, after the Termination Date and the repayment of the DIP Obligations in full, counsel to the Prepetition Lenders, all financial reports, budgets, forecasts, and all other legal or financial documentation, pleadings, and/or filings that are either (i) required to be provided (by the Debtors and/or their legal or financial advisors) to the DIP Agent and/or the DIP Lenders pursuant to the DIP Loan Documents, or the Prepetition Agents, as the case may be (ii) requested by the DIP Agent and/or the DIP Required Lenders (or their legal and financial advisors), or by the Prepetition Agent and/or the Prepetition Lenders (or their advisors), as the case may be.

28.    <u>Access to Books and Records.</u>  The Debtors (and/or their legal and financial advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to their business and activities, (b) cooperate, consult with, and provide to the DIP Agent and the DIP Required Lenders all such information as required or allowed under the DIP Loan Documents, the provisions of this Interim Order or that is afforded to the Creditors' Committee and/or the Creditors' Committee's respective legal or financial advisors, (c) permit, upon one (1) business day's notice, representatives of the DIP Lenders to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with

respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, and (d) permit representatives of the DIP Lenders to consult with and advise the Debtors' management on matters concerning the general status of the Debtors' business, financial condition and operations.

29.    Lenders Not Responsible Persons. In (a) making the decision to make the DIP Term Loans; (b) administering the DIP Term Loans; (c) extending other financial accommodations to the Debtors under the DIP Loan Documents; (d) making the decision to make the loans and financial accommodations under the Prepetition Loan Documents; (e) administering the loans and financial accommodations extended under the Prepetition Loan Documents; (f) extending other financial accommodations to the Debtors under the Prepetition Loan Documents; and (g) making the decision to collect the indebtedness and obligations of the Debtors, none of the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders shall be considered to (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent rights afforded them under the DIP Loan Documents or this Interim Order or (y) solely by reason of having undertaken the activities described in clauses (a) through (g) above, be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute).

30.     <u>Successors and Assigns</u>.  The DIP Loan Documents and the provisions of this Interim Order shall be binding upon the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Lenders and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Lenders and each of their respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code.  The terms and provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest, including, but not limited to a trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

31.     <u>Binding Nature of Agreement</u>.  Each of the DIP Loan Documents to which any of the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable in accordance with their terms.  The DIP Loan Documents have been or will be properly executed and delivered to the DIP Agent or the DIP Lenders by the Debtors, no later than one business day after entry of this Interim Order.  Unless otherwise consented to in writing (and in the case of the Prepetition Agents and the Prepetition Lenders, subject to paragraph 15 of this Interim Order), the rights, remedies, powers, privileges, liens, and priorities of the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Lenders provided for in this Interim Order, the DIP Loan Documents, or otherwise shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code.

32.     <u>Subsequent Reversal or Modification</u>.  This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lenders all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (a) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders, prior to the date of receipt by the DIP Agent and the Prepetition Agents of written notice of the effective date of such action or (b) the validity and enforceability of any lien or priority authorized or created under this Interim Order or pursuant to the DIP Loan Documents. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by any of the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders prior to written notice to the DIP Agent and the Prepetition Agents of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders, shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

33.     <u>Collateral Rights</u>.  If any party who holds a lien or security interest in DIP Collateral or Prepetition Collateral that is junior and/or subordinate to the DIP Liens, the Replacement Liens or the Prepetition Liens in such DIP Collateral or Prepetition Collateral receives or is paid the proceeds of such DIP Collateral or Prepetition Collateral prior to the indefeasible payment in full in cash (or credit solely (x) in the case of any Obligations owed to the Z Capital Lenders or their affiliates and (y) to the extent contemplated in the Stalking Horse

APA) and the complete satisfaction of (a) all DIP Obligations under the DIP Loan Documents and termination of the commitment in accordance with the DIP Loan Documents and (b) the Prepetition Indebtedness under the Prepetition Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral or Prepetition Collateral in trust for the DIP Lenders and the Prepetition Lenders and shall immediately turn over such proceeds for application by the DIP Agent and the Prepetition Agents to repay the DIP Obligations and the Prepetition Indebtedness in accordance with the DIP Loan Documents, the Prepetition Loan Documents and this Interim Order until indefeasibly paid in full.

34.    No Waiver.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Agent, DIP Lenders, Prepetition Agents or Prepetition Lenders may have to bring or be heard on any matter brought before this Court.

35.    Sale/Conversion/Dismissal.

(a)    It shall be an Event of Default under the DIP Financing Agreement if any Debtor breaches the Sale Milestone Covenant set forth in section 7.01(r) of the DIP Financing Agreement.

(b)    The Debtors shall not seek or support entry of any order that provides for either the sale of the stock of the Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code to any party unless, in connection with such event, (i) the proceeds of such sale are or will be paid to the DIP Agent and DIP Lenders on account of the DIP Obligations and the commitments under the DIP Loan Documents are terminated in accordance therewith on the closing date of such sale, (ii) the sale is an Approved

Sale, and (iii) the proceeds of such Approved Sale are distributed in accordance with the Sale Order.

 (c) If an order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise, or appointing a chapter 11 trustee or a responsible officer or examiner with expanded powers, is at any time entered, such order shall provide that (a) the DIP Liens, the DIP Superpriority Claim, the Replacement Liens and the Adequate Protection Superpriority Claims granted hereunder and in the DIP Loan Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Loan Documents until all DIP Loan Obligations are indefeasibly paid in full in cash (or credit solely (x) in the case of any Obligations owed to the Z Capital Lenders or their affiliates and (y) to the extent contemplated in the Stalking Horse APA) and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance with the DIP Loan Documents and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens, the DIP Superpriority Claim, the Replacement Liens and the adequate protection obligations set forth in paragraph 11.

 36. <u>Limits on Lenders' Liability</u>.  Nothing in this Interim Order or in any of the DIP Loan Documents, the Prepetition Loan Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or, subject to paragraph 15 of this Interim Order, the Prepetition Agents or the Prepetition Lenders, of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

37.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, the Requested Relief, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Loan Documents (or words of similar import), the terms and provisions of this Interim Order shall govern.

38.    <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

39.    <u>Survival</u>.  Except as otherwise provided herein, (a) the protections afforded under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of these Chapter 11 Cases or (ii) converting any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Superpriority Claims shall continue in these Chapter 11 Cases, in any such successor case or after any such dismissal. Except as otherwise provided herein, the DIP Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Superpriority Claims shall maintain their priorities as provided in this Interim Order, the Final Order, and the DIP Term Sheet Documentation, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Agent or the DIP Lenders in accordance with the Final Order), or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy

Code or dismissal of any of these Chapter 11 Cases, or by any other act or omission until (i) all DIP Loan Obligations are indefeasibly paid in full in cash (or credit solely (x) in the case of any Obligations owed to the Z Capital Lenders or their affiliates and (y) to the extent contemplated in the Stalking Horse APA) and completely satisfied, and the commitments under the DIP Term Sheet Documentation are terminated in accordance therewith, and (ii) the Prepetition Indebtedness has been or is deemed to have been satisfied in accordance with the Bankruptcy Code.

40.    <u>Adequate Notice/Scheduling of Final Hearing</u>.  The notice given by the Debtors of the Interim Hearing was given in accordance with the Bankruptcy Rules and the Local Rules and no other or further notice of the request for relief granted at the Interim Hearing is required. The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to any known party affected by the terms of this Interim Order and/or Final Order and any other party requesting notice after the entry of this Interim Order.  Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be *actually received* no later than seven (7) days prior to the Final Hearing at 4:00 p.m. (Eastern) by the following: (a) proposed counsel to the Debtors, Sidley Austin LLP, 555 West Fifth Street, Los Angeles, CA 90013 (Attn.: Christina M. Craige); (b) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Robert S. Brady and Edmon L. Morton; (c) counsel to the TCP DIP Lenders, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022 (Attn: David M. Hillman and Kelly V. Knight) and Landis, Roth & Cobb, LLP, 919 Market Street, Wilmington, DE 19801 (Attn: Adam G. Landis and Kerri K. Mumford); (d) counsel to the Z Capital DIP Lenders, Cleary Gottlieb Steen & Hamilton LLP,

One Liberty Plaza, New York, NY 10006 (Attn: James L. Bromley and Kara A. Hailey) and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Wilmington, DE 19801 (Attn: Derek C. Abbott); (e) counsel to the DIP Agent and the Prepetition Agents, Thompson Hine LLP, 335 Madison Avenue, 12th Floor, New York, New York 10017 (Attn: Curtis L. Tuggle); (f) Wells Fargo, in its capacity as Depository Bank, MAC E2064-07A, 333 S. Grand Avenue, 7th Floor, Los Angeles, CA 90071-1504 (Attn: Jeff Scott); (g) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: Benjamin A. Hackman); and (h) any Creditors' Committee appointed in these cases. The Court shall conduct a Final Hearing on the Requested Relief commencing on September 5, 2018 at 10:30 a.m. (Eastern).

41.    _Immediate Binding Effect; Entry of Interim Order_. This Interim Order shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in these Chapter 11 Cases.

42.    _Proofs of Claim_. Notwithstanding any order of this Court to the contrary, the Prepetition Agents, Prepetition Lenders, DIP Agent and DIP Lenders hereby are relieved of any obligation or requirement to file proofs of claim in these Chapter 11 Cases with respect to any Prepetition Indebtedness or DIP Obligations and any other claims or liens granted hereunder or created hereby. The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Agents and the Prepetition Lenders upon approval of this Interim Order, and the Prepetition Agents and the Prepetition Lenders shall be treated under section 502(a) of the Bankruptcy Code as if they each have filed a proof of claim. Notwithstanding the foregoing, the Prepetition Agents and the Prepetition Lenders are hereby authorized and entitled, in their discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of

claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or Successor Case(s) for any claim allowed herein.

43.     <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.

Dated: August 7, 2018
Wilmington, Delaware

_____
MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE