**<u>Exhibit 2</u>**

**Bidding Procedures**

## BIDDING PROCEDURES

These bidding procedures (the "**Bidding Procedures**") set forth the guidelines and process by which RM Holdco LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") shall market substantially all of their assets (the "**Assets**") for sale to interested parties and conduct one or more sales of such Assets (each, a "**Sale**") through a court-approved auction (the "**Auction**").

On September 5, 2018 the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered an order that, among other things, approved the Bidding Procedures set forth herein (the "**Bidding Procedures Order**"). Pursuant to the Bidding Procedures Order, the Bankruptcy Court has approved FM Restaurants (PT), LLC (or its assignee(s) or designee(s)) as the stalking horse bidder (the "**Stalking Horse Bidder**") for the Assets as set forth more fully in that certain Asset Purchase Agreement among the Stalking Horse Bidder and the Debtors, dated as of August 5, 2018 (together with the schedules and related documents thereto, the "**Stalking Horse Agreement**").[1]  The Bidding Procedures Order also set September 27, 2018 as the date on which the Bankruptcy Court will conduct the Sale Hearing (as defined below) in the event an Auction (as defined below) is held, or October 12, 2018 in the event no Auction is held.  At the Sale Hearing, the Debtors will seek entry of an order from the Bankruptcy Court authorizing and approving the Sale of the Assets to the Stalking Horse Bidder or another Qualified Bidder (or Qualified Bidders) (as defined below) that the Debtors determine to have made the highest or otherwise best offer for the Assets.

The Debtors provide these Bidding Procedures for use by Potential Bidders (as defined below) and Qualified Bidders (as defined below) in submitting Bids (as defined below) proposing a transaction to purchase or otherwise acquire the Assets and, as necessary, qualifying for and participating in the Auction.  The Debtors seek to enter into one or more transactions with one or more Qualified Bidders, so long as the individual Bid for all of the Assets by a Qualified Bidder or the Bids for less than all of the Assets by two or more Qualified Bidders, in combination, represent the highest or otherwise best offer for substantially all of the Assets.

As described further below, certain decisions under these Bidding Procedures will be made by the "**Decision Maker**", which shall mean (i) the board of managers of RM Holdco LLC (the "**Board**"), acting by majority vote cast by those members of the Board who are not (a) compensated by the Stalking Horse Bidder (unless the Stalking Horse Bidder has irrevocably and unconditionally disclaimed in a writing provided to the Debtors and Tennenbaum Capital Partners or their respective professionals (a copy of which writing may be filed on the docket in the Bankruptcy Court) any right (including the right of any of its affiliates, including Controlled Investment Affiliates (as defined in the DIP Facility)) to participate as a bidder in connection with the Auction, in which event such members shall be entitled to vote) or (b) officers of Holdco; or (ii) solely in the event that a vote of the

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Stalking Horse Agreement.

Board results in a deadlock decision, the CRO (as defined below).

1.    **Stalking Horse Agreement**

On August 5, 2018, the Debtors and the Stalking Horse Bidder entered into the Stalking Horse Agreement, pursuant to which the Stalking Horse Bidder proposes to acquire the Purchased Assets, which include substantially all Assets of the Debtors (but which, for the avoidance of doubt, exclude any Excluded Assets as defined in the Stalking Horse Agreement).

Pursuant to the Stalking Horse Agreement, the Stalking Horse Bidder will provide the Debtors with consideration for the Purchased Assets consisting of (a) payment to the Debtors of $46.75 Million in cash at Closing, *plus* (b) the Purchase Price Adjustment Amount, *plus* (c) the Assumed Liabilities, including the ongoing obligations under each Purchased Contract ((a)-(c) collectively estimated at approximately $48.74 Million), *less* (c) the Deduction Amount, all as detailed in the Stalking Horse Agreement. In accordance with the Stalking Horse Agreement and as approved by the Bankruptcy Court in the Bidding Procedures Order, the Stalking Horse Bidder has been authorized to receive a break-up fee in the amount of $1,402,500, subject to the terms and conditions in the Stalking Horse Agreement and Bidding Procedures Order (the "**Bid Protection**"), in order to provide an incentive and compensate the Stalking Horse Bidder for serving as the Stalking Horse Bidder and entering into the Stalking Horse Agreement with the knowledge and risk that arises from its participating in the Sale and subsequent bidding process, absent which the Stalking Horse Bidder would not have entered into the Stalking Horse Agreement. The Bid Protection shall be payable on the terms and conditions set forth in the Stalking Horse Agreement and the Bidding Procedures Order.

The Bid Protection shall constitute an allowed administrative expense claim against the Debtors' bankruptcy estates pursuant to sections 363, 503(b) and 507(a)(2) of the Bankruptcy Code, and, in the event the Debtors consummate an Alternative Transaction and solely to the extent earned pursuant to the Stalking Horse APA, shall be paid first out of the proceeds of such Alternative Transaction after payment of the claims under the DIP Facility and subject to the Carve-Out (as defined in the DIP Facility), free and clear of liens and other interests. Except for the Stalking Horse Bidder, no other party submitting an offer or Bid for the Assets or a Qualified Bid shall be entitled to any expense reimbursement, break-up fee, termination or similar fee or payment.

The transaction contemplated by the Stalking Horse Agreement is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code.

The Stalking Horse Bidder is deemed to be a Qualified Bidder (as defined below), and the Stalking Horse Agreement is deemed to be a Qualified Bid (as defined below) under these Bidding Procedures. For the avoidance of doubt, the Stalking Horse Bidder shall not be required to submit an additional Qualified Bid pursuant to Section 6 of these Bidding

Procedures other than the information set forth in Sections 6(k), (l), and (o), and the Purchaser Deposit shall serve as the Stalking Horse Bidder's Good Faith Deposit (as defined below).

**2.**    **"As Is, Where Is"**

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estates except to the extent set forth in the Stalking Horse Agreement or the Modified Agreement (as defined below) of another Successful Bidder or the Sale Order. The Stalking Horse Bidder and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures and (a) as to the Stalking Horse Bidder, the terms of the sale of the Assets set forth in the Stalking Horse Agreement, or (b) as to another Successful Bidder, the terms of the sale of the Assets set forth in the applicable Modified Agreement.

**3.**    **Free of Any and All Encumbrances**

Except as otherwise provided in the applicable Purchase Agreement (as defined below) or Sale Order, all of the Debtors' right, title, and interest in and to the Purchased Assets thereunder shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "**Encumbrances**") in accordance with 11 U.S.C. § 363, with such Encumbrances to attach to the proceeds of the sale of the Assets in accordance with the existing priorities of such Encumbrances.

**4.**    **Due Diligence**

**a.**    **Diligence Provided to Potential Bidders**

Subject to execution of a confidentiality agreement on terms reasonably acceptable to the Debtors (a "**Confidentiality Agreement**"), any party (i) willing to submit any proposal, solicitation or offer (each, a "**Bid**," and the person or entity making such Bid, a "**Bidder**") for the Assets and (ii) (a) capable of demonstrating to the Debtors that such party can satisfy the financial requirements set forth in Section 6(j) below or (b) that the Debtors reasonably believe based on their own investigation or knowledge has such financial wherewithal (such party, a "**Potential Bidder**"), may be granted access to public and non-public information relating to the Assets to facilitate its consideration for making its Bid.  Any Confidentiality Agreement

previously entered into between the Debtors and a Potential Bidder in effect on the date of the entry of the Bidding Procedures Order shall be deemed to be a Confidentiality Agreement for purposes of these Bidding Procedures.

For the avoidance of doubt, these participation requirements do not prohibit Piper Jaffray & Co. ("**Piper**") from distributing teaser and other promotional materials to potentially interested parties advising them of the opportunity to purchase the Assets pursuant to section 363 of the Bankruptcy Code, from engaging in discussions with such parties about the opportunity, or from providing non-confidential documents and information to such parties.

Until the Bid Deadline (as defined in Section 5 below), the Debtors will afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors determine in their discretion to be reasonable and appropriate under the circumstances. Potential Bidders requesting information in connection with their due diligence should contact the Debtors' investment banker, Piper, using the contact information provided below. The Debtors shall not be obligated to, but may in their discretion, furnish any due diligence information after the Bid Deadline and until the conclusion of the Auction to any Potential Bidder who has submitted a Bid as of the Bid Deadline. The Debtors and their advisors are not responsible for, and will bear no liability with respect to, any information obtained by Bidders in connection with the sale of the Purchased Assets except to the extent expressly set forth in the applicable Purchase Agreement.

Notwithstanding anything herein to the contrary, the Debtors, in consultation with the Consultation Parties, may withhold information or restrict access to certain materials in the Data Room if providing such information or materials to a Potential Bidder would, in the Debtors' business judgment, put the Debtors at a competitive disadvantage, result in the disclosure of information or materials subject to attorney-client privilege, or breach any contract or other obligation of the Debtors; provided, however, that the Debtors shall provide any Potential Bidder with such information as has been provided to the Stalking Horse Bidder, or with information substantively similar to such information. The Debtors, in consultation with the Consultation Parties (as defined below), reserve the right not to provide due diligence access to any Potential Bidder that the Debtors conclude in their reasonable business judgment is not likely to become a Qualified Bidder. As used in these Bidding Procedures, "**Consultation Parties**" means (i) the professionals and advisors to any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "**Committee**"),[2] and (ii) any of the following parties, but only to the extent it has delivered written notice to the Debtors that it has irrevocably waived its right to bid on the Assets and participate at the Auction: (a) the DIP Agent and (b) the lenders under the

---

[2] Unless and until a member of the Committee delivers a written notice to the Debtors irrevocably waiving its right to bid on the Assets and participate at the Auction, the Committee's professionals and advisors (i) may not share or disclose any information they receive in their capacity as Consultation Parties with such Committee member, (ii) shall exclude such Committee member from any and all discussions within the Committee relating to the Auction and Sale of the Assets, and (iii) shall restrict, limit and prohibit the dissemination to such member of any confidential information relating to the Auction and Sale of the Assets. For the avoidance of doubt, the DIP Agent and each DIP Lender (if it is a Consultation Party) and their respective advisors may not disclose any confidential information received in their capacity as Consultation Parties, including any confidential information regarding Potential Bidders, Qualified Bidders or any Qualified Bid, to any other DIP Secured Party unless and until such time, if ever, that such information is made available to all Qualified Bidders.

DIP Facility (the "**DIP Lenders**," and together with the DIP Agent, the "**DIP Secured Parties**"). For the avoidance of doubt, Z Capital Group, LLC and any of its affiliates (collectively, the "**Z Capital Parties**," and each, a "**Z Capital Party**") shall not be Consultation Parties unless and until the Stalking Horse Bidder has delivered written notice to the Debtors that it and all Z Capital Parties have irrevocably waived their right to bid on the Assets and be Auction Participants.

The Debtors will not provide any due diligence materials after the Bid Deadline to any party who has failed to submit a Bid as of the Bid Deadline.  The Debtors shall provide the Stalking Horse Bidder with access to all material due diligence materials, management presentations, on-site inspections, and other information provided to any Potential Bidder that were not previously made available to the Stalking Horse Bidder as soon as reasonably practicable and in no event later than five (5) Business Days after the date the Debtors made such information available to any Potential Bidder.

**b.      Diligence Provided by Potential Bidders and Qualified Bidders**

Each Potential Bidder and each Qualified Bidder shall comply with all reasonable requests for information from the Debtors regarding such Bidder and its contemplated transaction.  Failure by a Potential Bidder or a Bidder that would otherwise be a Qualified Bidder to provide such information may be a basis for the Debtors, in consultation with the Consultation Parties, to deem such Bidder not to be a Qualified Bidder and to prohibit such Bidder from participating in any Auction.

**5.      Bid Deadline**

All Bids must be submitted in writing so that they are actually received no later than 4:00 p.m. (prevailing Eastern Time) on September 21, 2018 (the "**Bid Deadline**").  To properly submit a Bid, a Potential Bidder (as defined below) must deliver written copies of its Bid to each of the following notice parties (collectively, the "**Notice Parties**"):

(a)      Co-counsel to Debtors:

Sidley Austin LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Attention:  Vijay S. Sekhon
E-mail:  vsekhon@sidley.com

-and-

Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Attention:  Christina M. Craige

01:23599207.2

5

E-mail:  ccraige@sidley.com

-and-

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Attention:  Edmon L. Morton
E-mail:  emorton@ycst.com

(b)    The Debtors:

RM Holdco LLC
5660 Katella Avenue, Suite 200
Cypress, CA 90630
Attention:  Jonathan M. Tibus, Chief Restructuring Officer of the Debtors
("CRO")
E-mail:  jtibus@alvarezandmarsal.com

(c)    The Debtors' investment banker:

Piper Jaffray & Co.
2321 Rosecrans Avenue, Suite 3200
El Segundo, CA 90245
Attention:  Teri Stratton
E-mail:  teri.l.stratton@pjc.com

(d)    Counsel to the  Committee, if appointed:

[TBD]

A Bid delivered after the Bid Deadline and/or by a Potential Bidder that is not a Qualified Bidder shall not constitute a Qualified Bid (as defined below).

6.    **Bid Requirements**

To participate in the Auction, a Qualified Bidder (as defined below) other than the Stalking Horse Bidder (except as to subsections (k), (l) and (o)) must submit a Bid to the Notice Parties by the Bid Deadline that, as determined by the Debtors, satisfies each of the following conditions (unless such requirement is waived by the Debtors) (each such Bid, a "**Qualified Bid**"):

(a)    <u>Written Submission of APA.</u>  Each Bid must be in writing and include:  (i) a clean purchase agreement signed by the Bidder, accompanied by all exhibits and

schedules contemplated by the purchase agreement and, to the extent required by the terms and conditions of the Bid, any ancillary agreements described in the purchase agreement with all exhibits and schedules thereto (each such purchase agreement, together with its exhibits, schedules, and ancillary agreements, if any, a "**Modified Agreement**"); (ii) a redline reflecting the Bidder's proposed changes to the Stalking Horse Agreement (including all exhibits and schedules thereto). Each Modified Agreement and the Stalking Horse Agreement shall be a "**Purchase Agreement**" for purposes of these Bidding Procedures.

(b)    <u>Commitment to Close.</u>  Each Bid must contain a written statement that the Bidder is willing to consummate and fund the Sale proposed in the Modified Agreement within two (2) Business Days after satisfaction of the conditions to closing, and in any event by the close of business on the date that is the earlier of (i) sixty (60) days after the date on which the Sale Order is entered and (ii) December 15, 2018 (the "**Closing Deadline**").

(c)    <u>Commitment to Serve as Back-up Bidder.</u>  Each Bid must contain a written statement that the Bidder will serve as the Backup Bidder.

(d)    <u>Assets to be Acquired.</u>  Each Bid must identify with reasonable particularity the Assets be Purchased Assets and the Assets to be Excluded Assets.  The Bid may offer to purchase substantially all of the Assets or only a portion of the Assets; <u>provided</u> <u>however</u>, that a Bid that offers to purchase only a portion of the Assets may only be a Qualified Bid to the extent that the value of such Bid, in combination with the value of other Bids for the remaining Assets, exceeds the Minimum Initial Overbid Amount (as defined below) applicable to Qualified Bids for substantially all of the Assets.  The Debtors, in consultation with the Consultation Parties, may waive or modify the application of the Qualified Bid conditions in respect of Bids for a portion of the Assets (other than the requirement that the value of any such Qualified Bid, in combination with the value of other Bids for Assets, exceeds the Minimum Initial Overbid Amount applicable to Qualified Bids for substantially all of the Assets).

(e)    <u>Executory Contracts and Leases to be Assumed.</u>  Each Bid must identify with reasonable particularity the executory contracts and unexpired leases of the Debtors that the Bidder seeks to have the Debtors assume and assign to the Bidder; <u>provided</u>, <u>however</u>, that the Bid may provide for designation rights with respect to executory contracts and unexpired leases substantially similar to the designation rights to the extent set forth in the Stalking Horse Agreement.

(f)    <u>Irrevocable.</u>  Each Bid must be irrevocable until (i) if such Bidder is designated as a Successful Bidder, the Closing of the Sale to such Bidder, and (ii) if such Bidder is designated as a Backup Bidder, the earlier to occur of (A) five (5) days after the closing of the transaction(s) by which all of the Assets that were subject to the Backup Bid have been transferred to one or more Qualified Bidders at the closing of a Sale or Sales conducted pursuant to these Bidding Procedures or

(B) the Closing Deadline (the "**Backup Bid Closing Deadline**"). Notwithstanding anything to the contrary in these Bidding Procedures, if the Stalking Horse Bidder is selected as a Backup Bidder, the Stalking Horse Bidder's Backup Bid shall be subject to all of the terms of the Stalking Horse Agreement (as such agreement may be modified by the Stalking Horse Bidder at the Auction consistent with the provisions of these Bidding Procedures and the Bidding Procedures Order); provided, however, that, subject to the terms of the Stalking Horse Agreement permitting termination, each Backup Bid including, without limitation, the Backup Bid of the Stalking Horse Bidder, shall remain open and binding until the earlier to occur of (i) one (1) Business Day after the closing of the transaction(s) by which all of the Assets that were subject to such Backup Bid have been transferred to one or more Qualified Bidders at the closing of a Sale or Sales conducted pursuant to these Bidding Procedures or (ii) the Backup Bid Closing Deadline.

(g)     Good-Faith Deposit.  Each Bid must be accompanied by a deposit paid by wire transfer of immediately available funds or such other form acceptable to the Debtors payable to the order of the Debtors (the "**Good Faith Deposit**") in the amount of not less than 10 percent (10%) of the stated cash Purchase Price in the Modified Agreement to be held in an account designated by the Debtors to be applied or returned, as applicable, pursuant to the terms of these Bidding Procedures.

(h)     Minimum Initial Overbid Amount.  Each Bid for substantially all of the Debtors' Assets must offer to the Debtors aggregate value in an amount, as determined by the Debtors, in their reasonable business judgment, that is greater than or equal to the sum of (i) the value offered under the Stalking Horse Agreement, *plus* (ii) the Bid Protection, *plus* (iii) cash in the amount of at least $250,000 (the "**Minimum Initial Overbid Amount**"), unless otherwise set by the Debtors.

(i)     Contingencies.  No Bid may be conditioned on any due diligence, internal approval, financing, or regulatory or third-party approval contingencies of any kind (other than regulatory contingencies required by law or as set forth in the Stalking Horse Agreement).  A Bid must set forth each regulatory approval to consummate the Sale and the time period within which the Bidder expects to receive such regulatory approval(s) (and in the case where receipt of any regulatory approval is expected to take more than 30 days following execution and delivery of the Purchase Agreement, those actions the Bidder will take to ensure receipt of such approvals as quickly as possible).

(j)     Proof of Financial Ability to Perform.  Each Bid must contain written evidence, to the Debtors' satisfaction, of a firm commitment for financing, or other evidence of ability to consummate the Sale contemplated by the Modified Agreement, that will allow the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Bidder's

financial and other capabilities to consummate the transactions contemplated in such Bidder's Modified Agreement (taking into account the conditions and third-party beneficiary rights, if any, in any such commitment).  If the purchaser will be a newly formed entity, the Bid must identify, among other things, the entity or entities that will provide backstops in the form of a guarantee and/or an equity commitment letter and describe the nature of such arrangement(s).

(k)    <u>Financial Statements.</u>  To the extent not previously provided, each Bid must include the latest audited financial statements and unaudited financial statements of the Bidder  for the past three (3) years or, if the Bidder is an entity formed for the purpose of acquiring the Assets, the latest audited financial statements and unaudited financial statements for the past three (3) years of the direct and indirect equity holders or sponsors of the Bidder who will guarantee the obligations of the Bidder, or such other form of financial disclosure and/or credit support or enhancement, if any, that will allow the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Bidder's financial and other capabilities to consummate the transactions contemplated in such Bidder's Purchase Agreement.

(l)    <u>Identity of Purchaser.</u>  Each Bid must, to the satisfaction of the Debtors, in consultation with the Consultation Parties, fully disclose (i) the identity of each person or entity that will be bidding for the Assets or otherwise participating in connection with such Bid, (ii) the terms of any such participation, and (iii) if any entity has been formed for the purpose of acquiring some, or all, of the Assets, the parties that will bear liability for any breach by such person or entity, and the financial capacity of such parties to satisfy such liability.

(m)    <u>No Fees or Commissions.</u>  With the exception of the Bid submitted by the Stalking Horse Bidder, no Bid may (i) request or entitle the Bidder to any break-up fee, expense reimbursement fee or similar type of payment, or (ii) obligate the Debtors to pay commissions, fees or expenses to any agent or broker.  Further, by submitting a Bid, a Bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code or in any way related to the submission of its Bid or the Bidding Procedures.

(n)    <u>As Is, Where Is.</u>  Each Bid must contain an acknowledgement and representation that the Bidder:  (i) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction, except as

expressly stated in the Purchase Agreement.

(o) <u>Adequate Assurance.</u>  Each Bid must include evidence of the Potential Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Bidder's ability to perform in the future the contracts and leases proposed in its Bid to be assumed by the Debtors and assigned to such Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases.  Such evidence of adequate assurance shall include, without limitation, (i) the specific names under which the bidder or its designee intend to lease and operate the store; (ii) the potential assignee's intended use for the space; (iii) cash flow projections, business plans, calculations, pro formas or other materials supporting the assignee's ability to perform under the contracts and leases to be assigned; (iv) documents and other evidence of the potential assignee's retail experience and any other relevant experience; (v) a designated contact person for the proposed assignee whom non-Debtor counterparties may directly contact with adequate assurance-related inquiries; and (vi) other information relevant to the proposed assignee's ability to satisfy the requirements of section 365(b)(3)(A)-(D) of the Bankruptcy Code (to the extent applicable).  The Stalking Horse Bidder shall provide such adequate assurance information to the Debtors within one (1) Business Day after entry of the Bidding Procedures Order.

(p) <u>Regulatory Filings.</u>  Each Bid must provide that the Bidder shall make all necessary filings under the Hart-Scott-Rudino Antitrust Improvements Act of 1976, as amended, or other applicable competition laws or regulations, if any, and pay all fees and expenses of such filings (including the Debtors' fees and expenses).

(q) <u>Corporate Authority.</u>  Each Bid must include evidence of authorization and approval from the Bidder's board of directors (or comparable governing body) with respect to the submission of the Bid and the consummation of the transactions contemplated in such Bidder's Purchase Agreement.

(r) <u>Employees.</u>  Each Bid must contain a detailed description of how the Qualified Bidder intends to treat current employees of the Debtors.

(s) <u>Privacy Policies.</u>  Each Bid must provide to the Debtors' satisfaction that the Bidder will adhere to the Debtors' prepetition privacy policies regarding personally identifiable information.

(t) <u>Access to Books and Records.</u>  Each Bid must contain provisions allowing the Debtors reasonable access to the Debtors' books and records for the administration of their bankruptcy cases if the Bid provides for the purchase of such books and records.

(u)    Format.  All documentation for each Bid must be provided in electronic form.

The Debtors have retained or intend to retain Hilco Real Estate, LLC ("**HRE**") to negotiate lease concessions.  HRE is to be compensated based upon a percentage of the lease concessions it secures.  To the extent HRE's retention is approved by the Bankruptcy Court, any decision by a Qualified Bidder not to assume the obligation to pay HRE according to the terms of HRE's court-approved compensation agreement will be considered in determining which Qualified Bid ultimately is chosen as highest or otherwise best.

Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors, and the Bidder submitting that Bid will not be permitted to participate in the Auction (as defined below); provided, however, that the Debtors, in consultation with the Consultation Parties, reserve the right to work with any Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  In addition, the Debtors may negotiate or seek clarification of any Bid from any Bidder between the Bid Deadline and the Auction.  Nothing in these Bidding Procedures shall be deemed to either limit or expand any rights of a Qualified Bidder with a valid and perfected lien on any of the Assets of the Debtors' estates (a "Secured Creditor"), if any, to credit bid all or a portion of such Secured Creditor's claim to the extent permitted under section 363(k) of the Bankruptcy Code.

Without the consent of the Debtors, a Qualified Bidder may not amend, modify, or withdraw its Bid, except for proposed amendments to increase the amount or otherwise improve the terms of the Qualified Bid during the period that such Qualified Bid is required to remain irrevocable and binding.  No Qualified Bid may be amended or modified to consist of terms that are less favorable to the Debtors than those contained in the original (or then current) version of such Qualified Bid, as determined by the Debtors in consultation with the Consultation Parties.

## 7.    **Designation of Qualified Bidders**

A "**Qualified Bidder**" is a Bidder that (i) submits a Qualified Bid by the Bid Deadline (or later, in the discretion of the Debtors in consultation with the Consultation Parties), and (ii) the Decision Maker determines, in the exercise of reasonable business judgment, after consultation with the Consultation Parties, is reasonably likely (based on financial information submitted by the Bidder, experience, and other considerations deemed relevant by the Debtors in consultation with the Consultation Parties) to consummate a Sale if selected as a Successful Bidder or a Backup Bidder.  As noted above, the Stalking Horse Bidder is deemed to be a Qualified Bidder.

As promptly as practicable after the Bid Deadline (but in no event later than one (1) Business Day prior to the Auction), the Debtors will notify (a) each Bidder that submits a Bid whether such Bidder is a Qualified Bidder, and (b) the Stalking Horse Bidder and all other Qualified Bidders, if any, whether or not any Bids (other than the Stalking Horse Agreement)

constitute Qualified Bids and identify the Qualified Bidders making any such Qualified Bids. Each Qualified Bidder will be given access to the Opening Bid (as defined below).

Any Good Faith Deposit accompanying a Bid that the Debtors, after consultation with the Consultation Parties, determine not to be a Qualified Bid, shall be returned promptly following such determination unless otherwise agreed by the Bidder and the Debtors; <u>provided</u>, <u>however</u>, that for the avoidance of doubt, no Bidder may participate in the Auction regardless of whether it otherwise cures the deficiencies that initially prevented its Bid from being a Qualified Bid unless the Debtors are in possession of a Good Faith Deposit from such Bidder at the time of the Auction.

## 8.    <u>Auction</u>

If the Debtors receive a Qualified Bid other than the Stalking Horse Agreement, the Debtors will conduct an Auction to determine the Successful Bidder(s).  If no Qualified Bid other than the Qualified Bid submitted by the Stalking Horse Bidder is received by the Bid Deadline (unless otherwise extended by the Debtors in consultation with the Consultation Parties), then (i) the Auction will not be held, (ii) the Stalking Horse Bidder will be deemed the Successful Bidder, (iii) the Stalking Horse Agreement will be the Successful Bid, and (iv) at the Sale Hearing (defined below), the Debtors will seek Bankruptcy Court approval of and authority to consummate the proposed Sale to the Stalking Horse Bidder as contemplated by the Stalking Horse Agreement.

At least one (1) Business Day in advance of the Auction, the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid or Qualified Bid(s), as determined by the Debtors, in consultation with the Consultation Parties (the "**Opening Bid**"), and will provide copies of the applicable Purchase Agreement for such Opening Bid to each Qualified Bidder.

The determination of which Qualified Bid constitutes the Opening Bid shall take into account any factors the Decision Maker, in consultation with the Consultation Parties, reasonably deems relevant to the value of the Qualified Bid to the estates, including, among other things, the following: (i) the amount and nature of the consideration; (ii) the proposed assumption of any liabilities; (iii) the ability of the Qualified Bidder to close the proposed transaction on or before the Closing Deadline; (iv) any Purchase Price adjustments; (v) the impact of the contemplated transaction on any actual or potential litigation; (vi) the net economic effect of any changes from the Stalking Horse Agreement, if any, provided by the contemplated transaction documents (the "**Contemplated Transaction Documents**"); (vii) the net after-tax consideration to be received by the Debtors' estates; (viii) the conditions set forth in the applicable Purchase Agreement, and (ix) such other considerations the Decision Maker, in consultation with the Consultation Parties, deems relevant.

The Auction, if any, shall take place on **October 4, 2018, at 10:00 a.m.** (prevailing Eastern Time), at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801.  The Auction may be adjourned from time

to time by the Decision Maker, in consultation with the Consultation Parties, so long as such extended deadline does not exceed the applicable milestone for such deadline under the DIP Facility, unless such milestone is extended in accordance with the terms of the DIP Facility, in which case notice of such adjournment and the time and place for the resumption of the Auction will be filed with the Bankruptcy Court and served promptly on Qualified Bidders, any other parties who have provided written notice of their intent to attend the Auction as set forth in Section 9(a) below, and all other parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 prior to the Auction.

The Auction shall be conducted according to the following procedures:

**a. Participation at the Auction**

Qualified Bidders shall attend the Auction in person, or through a duly-authorized representative.

Only the Stalking Horse Bidder and any other Qualified Bidder(s) (or their duly-authorized representatives) (collectively, the "**Auction Participants**") are eligible to submit Bids at the Auction. While only the Auction Participants may submit Bids at the Auction, the authorized representatives and respective counsel and advisors of each of the Qualified Bidder(s) (regardless of whether such representatives, counsel and advisors are serving as Auction Participants), the Debtors, the DIP Secured Parties, the Committee, and any of the Debtors' creditors who notify the Debtors in writing no later than two (2) days prior to the Auction of such creditors' intent to attend the Auction by contacting the Debtors' counsel, Vijay S. Sekhon (vsekhon@sidley.com) and Christina M. Craige (ccraige@sidley.com), shall be permitted to attend the Auction, provided, however, the Debtors, in consultation with the Consultation Parties, may exclude parties whom the Debtors deem to be detrimental to the sale process. Notwithstanding any of the foregoing, any representative of the United States Trustee may attend the Auction and shall not be required to provide prior notice of such representative's intent to attend.

Each Qualified Bidder participating in the Auction (including any Qualified Bidder participating through a duly-authorized representative) will be required to confirm on the record that it has not engaged in any collusion regarding the Bidding Procedures, the Auction or the Sale.

**b. The Debtors Shall Conduct the Auction**

The CRO and the Debtors' professionals shall direct and preside over the Auction on behalf of the Debtors. At the start of the Auction, the CRO shall describe the terms of the Opening Bid. All Bids made after the Opening Bid shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Opening Bid, all applicable Overbids, and the Successful Bid.

01:23599207.2

The CRO, on behalf of the Debtors, in his reasonable business judgment, and in consultation with the Consultation Parties, may conduct the Auction in the manner that he determines will result in the Successful Bid(s) that will maximize the overall value of the Debtors' estates, and may adopt and modify rules for the Auction at the Auction that, in his reasonable business judgment, in consultation with the Consultation Parties, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bidding Procedures Order, the Bankruptcy Code, or any order of the Bankruptcy Court.

### c. **Terms of Overbids**

An "**Overbid**" is any Bid made at the Auction subsequent to the CRO's announcement of the Opening Bid.  To submit an Overbid for purposes of the Auction, a Qualified Bidder must comply with the following conditions:

(i)     Minimum Overbid Increment.  The initial Overbid, if any, shall provide for total consideration to the Debtors (net of any amount for Bid Protection, if applicable) with a value that exceeds the value of the consideration under the Opening Bid by an incremental amount that is not less than $250,000 in cash (the "Minimum Overbid Increment"), unless otherwise determined by the CRO in his reasonable business judgment.  Additional consideration in excess of the amount set forth in the Opening Bid shall be in the form of cash consideration.  Upon the solicitation of each round of Overbids, the CRO may, in his reasonable business judgment, and in consultation with the Consultation Parties, adjust the amount of the applicable Minimum Overbid Increment.

(ii)    Conclusion of Each Overbid Round.  Upon the solicitation of each round of applicable Overbids, the CRO may, in consultation with the Consultation Parties, announce a deadline (as the CRO may, in his reasonable business judgment, extend from time to time, the "**Overbid Round Deadline**") by which time any Overbids must be submitted to the Debtors.

(iii)   Overbid Alterations.  An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates on the whole than any prior Bid or Overbid, as determined in the CRO's reasonable business judgment, in consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

(iv)    Announcing Highest or Otherwise Best Bid.  Subject to each Overbid Round Deadline, the CRO, on behalf of the Debtors, shall announce whether the Decision Maker, in consultation with the Consultation Parties, has identified in the initial applicable Overbid round, one or more Overbids as being higher or otherwise better than the Initial Minimum

Overbid for such asset package, or in subsequent rounds, the Overbid(s) previously designated by the Decision Maker as the prevailing highest or otherwise best Bid for a given asset package (for each asset package, collectively, the "**Prevailing Highest Bid**").  After each round of bidding, including the initial round, the CRO shall disclose to all Qualified Bidders the material terms of any Overbid(s) designated by the Decision Maker as the Prevailing Highest Bid, as well as the value attributed by the Decision Maker to such Prevailing Highest Bid.

(v)  <u>Bids for Less than Substantially All Assets.</u>  The Decision Maker may consider and accept Bids for any portion of the Assets, as well as Bids for substantially all of the Assets, and the Decision Maker may hold separate Auctions for portions of the Assets in the discretion of the Decision Maker in consultation with the Consultation Parties; provided, however, that the Decision Maker may consider and accept Bids for less than substantially all of the Assets only so long as the value of such Bids, in combination, constitute an Overbid.

Each Overbid by a Qualified Bidder at the Auction, if not inconsistent with the provisions of these Bidding Procedures, shall be deemed to constitute a Qualified Bid.

## d.  Consideration of Overbids

The Debtors reserve the right, in their reasonable business judgment, and in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things: (A) facilitate discussions between the Debtors, the Consultation Parties, and Qualified Bidders; (B) allow Qualified Bidders to consider how they wish to proceed; (C) consider and determine the current Prevailing Highest Bid at any given time during the Auction; and (D) give any Qualified Bidder the opportunity to provide the CRO with such additional evidence as the CRO, in consultation with the Consultation Parties, in his reasonable business judgment, may require that the Qualified Bidder (other than Stalking Horse Bidder) has sufficient internal resources, or has received sufficient debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

The Bid Protection will be taken into account in each round of bidding.  For the avoidance of doubt, during the Auction, any bid by the Stalking Horse Bidder shall be deemed to be increased by the amount of the Bid Protection, <u>provided</u> that in the event that the Stalking Horse Bidder is the Successful Bidder and its Successful Bid includes the Bid Protection, the Stalking Horse Bidder shall be entitled to credit that amount against the Purchase Price.

## e.  No Round-Skipping

To remain eligible to participate in the Auction, in each round of bidding, (i) each Qualified Bidder must submit a bid in such round of bidding that is of a higher value or is a better offer than the immediately preceding bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a bid in such round of bidding that is of a higher value or is a better offer than the immediately

preceding bid submitted by a Qualified Bidder in such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction. To the extent the Debtors hold separate Auctions for substantially all Assets and for Assets separated into lots, the requirements of this Section will be applied separately to each Auction.

**f.    Closing the Auction**

    (i)    The Auction shall continue until there is only one offer (which may consist of one Qualified Bid for substantially all of the Assets or more than one Qualified Bid for complementary portions of Assets) that the Decision Maker determines, on behalf of the Debtors, in the exercise of reasonable business judgment, and after consultation with the Consultation Parties, to be the highest or otherwise best offer for the Assets (one or more such Qualified Bids, the "**Successful Bid**," and the Qualified Bidder or Qualified Bidders making such Successful Bid, the "**Successful Bidder**"); provided further that, any release of liens by the DIP Agent or the Prepetition Agents shall not include any release of liens with respect to the proceeds of the Sale of the Assets subject to such Bid. Within one (1) Business Day after the conclusion of the Auction, the Debtors shall file with the Bankruptcy Court and serve upon all Qualified Bidders and parties that have requested notice in these cases a notice identifying the Successful Bidder and the Backup Bidder and post such notice on the Debtors' bankruptcy website.

    (ii)    After determining the Successful Bid and the Successful Bidder, the Decision Maker will also determine, on behalf of the Debtors, in the Decision Maker's reasonable business judgment, and after consultation with the Consultation Parties, the Qualified Bidders(s) with the next highest or otherwise best Bid(s) for the Assets. Such Bid(s) shall be declared the "**Backup Bid**," and the Qualified Bidder(s) making such Backup Bid, the "**Backup Bidder**," at which point the Auction will be closed.

    (iii)    At the closing of the Auction, at the CRO's request, the Successful Bidder and the Backup Bidder shall recite on the record of the Auction any and all key terms of the Successful Bid and the Backup Bid, respectively, to ensure the accuracy of the final Bids and to aid in the final documentation of the Sale, and each of the Successful Bidder and the Backup Bidder shall promptly thereafter sign a revised Purchase Agreement reflecting the terms of the Successful Bid and the Backup Bid, as applicable.

    (iv)    The Debtors shall not consider any Bids or Overbids submitted after the closing of the Auction, and any such Bids or Overbids shall be deemed untimely and shall not constitute Qualified Bids. The determination of the Successful Bid and Backup Bid at the closing of the Auction shall be final, subject only to approval by the Bankruptcy Court.

    (v)    As soon as reasonably practicable after the closing of the Auction, (A) each of the Successful Bidder and the Backup Bidder, as applicable, will transfer via wire transfer of immediately available funds or such other form acceptable to the CRO payable to the order of the Debtors an amount such that the Good Faith Deposit of the Successful Bidder and the Backup Bidder, as modified in the Auction, is not less than 10 percent (10%) of the stated cash Purchase Price in the Successful Bid and the Backup Bid, as applicable, and (B) the Debtors shall cause the Qualified Bid Documents for the Successful Bidder and the Backup Bidder to be filed with the Bankruptcy Court.

### g.   Consent and Waiver as Condition to Bid

All Qualified Bidders at the Auction shall be deemed to have (i) consented to the Bankruptcy Court's jurisdiction and constitutional authority to enter a final order in connection with any disputes relating to the Auction, and the construction and enforcement of the Potential Bidder's Contemplated Transaction Documents, as applicable, (ii) waived any right to a jury trial in connection with such disputes, and (iii) waived any objection to these Bidding Procedures.

### h.   Terms of Bid Protection

If the Decision Maker accepts a Qualified Bid other than the Qualified Bid of the Stalking Horse Bidder as the Successful Bidder, then upon consummation of the Sale to the Successful Bidder, the Debtors shall pay to the Stalking Horse Bidder as compensation for the Stalking Horse Bidder's efforts in connection with the negotiation and execution of the Stalking Horse Agreement and the transactions contemplated thereby an amount equal to the Bid Protection due to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse Agreement, as approved by the Bankruptcy Court under the Bidding Procedures Order.

### 9.   Acceptance of Successful Bid

The Debtors shall sell the Purchased Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the Bid. The Debtors will be deemed to have accepted a Bid only when such Bid has been approved by the Bankruptcy Court.

### 10.   Sale Hearing

A hearing to approve the sale of the Assets to the Successful Bidder shall be conducted by the Bankruptcy Court, located at 824 Market Street, Wilmington DE 19801, on (i) **September 27, 2018, at 3:00 p.m.** (Eastern Time), if no Auction is held or (ii) **October 12, 2018, at 10:30 a.m.** (Eastern Time) (the "**Sale Hearing**") if an Auction is held.

01:23599207.2

Following the approval of the sale of the Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder (i) fails to consummate a Sale by the Closing Deadline, (ii) breaches such Successful Bidder's Purchase Agreement, or (iii) otherwise fails to perform, the Decision Maker shall be authorized, but not required, to deem the Backup Bid(s), as disclosed at the Sale Hearing, the Successful Bid(s) and the Debtors shall be authorized, but not required, to consummate the sale with the Qualified Bidder(s) submitting such Backup Bid(s) without further notice or orders of the Bankruptcy Court.  In the event that there are multiple Successful Bidders and/or Backup Bidders and only one of such Successful Bidders or Backup Bidders engages in the acts or omissions described in clauses (i) through (iii) of the foregoing sentence, the Decision Maker may, in the exercise of discretion, and in consultation with the Consultation Parties, elect to close the contemplated transactions with some or all of the other Successful Bidders or Backup Bidders, as applicable.

The Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at the Sale Hearing or in the agenda or notice filed in respect of such hearing; provided that such date is consistent with the applicable milestone for the entry of the Sale Order under the DIP Facility, unless such milestone is extended in accordance with the terms of the DIP Facility.

## 11.    <u>Return of Good Faith Deposit</u>

Good Faith Deposits provided by Bidders other than the Stalking Horse Bidder (i) shall be held by the Debtors in one or more non-interest-bearing accounts on terms acceptable to the Debtors in their sole discretion, and (ii) shall not become property of the Debtors' estates nor become subject to any liens encumbering such accounts and/or the other funds therein absent further order of the Bankruptcy Court.  All Good Faith Deposits of Bidders not selected as the Successful Bidder or the Backup Bidder shall be returned to such Bidders no later than five (5) business days following the close of the Auction.  In no event shall interest or any other amounts in excess of the Good Faith Deposit be subject to refund.

The Good Faith Deposit of the Successful Bidder(s) shall be applied to the Purchase Price under such Successful Bidder's Purchase Agreement at the Closing thereunder.  If a Backup Bidder consummates a Sale transaction under such Backup Bidder's Purchase Agreement, the Good Faith Deposit of such Backup Bidder will be applied to the Purchase Price under such Backup Bidder's Purchase Agreement at the Closing thereunder.

If a Successful Bidder fails (or Successful Bidders fail), or a Backup Bidder fails (or Backup Bidders fail) to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder(s), the Debtors shall be entitled to retain the Good Faith Deposit as part of their damages resulting from the breach or failure to perform by the Successful Bidder(s) or Backup Bidder(s), as applicable, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors.

Notwithstanding anything herein to the contrary, the terms under which the Stalking

Horse Bidder provided a Good Faith Deposit (in the form of the Purchaser Deposit) and the terms of its use, release and return to the Stalking Horse Bidder shall be governed by the Stalking Horse Agreement.

## 12.    Modifications

These Bidding Procedures may be modified in any manner consistent with the Debtors' fiduciary duties and applicable law only upon the express written consent of the Debtors, in consultation with the Consultation Parties, or by order of the Bankruptcy Court; provided, however, that any such modifications must be provided in writing by email (to the notice parties listed in the draft purchase agreement submitted with the relevant Bid) to all Bidders (or Qualified Bidders following the Bid Deadline) and may in no event (a) permit the submission of Bids after the close of the Auction, unless otherwise ordered by the Bankruptcy Court and (b) change any of the Bid Requirements set forth in Section 6 of these Bidding Procedures except to the extent specifically provided therein.

## 13.    Reservation of Rights

Without prejudice to the rights of the Stalking Horse Bidder under the Stalking Horse Agreement, and subject to the limitations set forth in Section 12, the Debtors, after consultation with the Consultation Parties, shall have the right, in the exercise of the CRO's reasonable business judgment on behalf of the Debtors' estates, to adopt such other rules for the Bidding Procedures which, in the Debtors' reasonable business judgment, will better promote the goals of the Bidding Procedures, and which are not inconsistent with the Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, or any order of the Bankruptcy Court.  All such additional rules shall be communicated to the Consultation Parties, Qualified Bidders, and (if such modifications are made prior to the Bid Deadline) Potential Bidders.  Without limiting the foregoing, the Debtors may determine to distribute or not distribute copies of other Qualified Bids to other Qualified Bidders prior to or during the Auction other than with respect to the distribution of the Opening Bid, and the disclosure of each Prevailing Highest Bid, as set forth above.

01:23599207.2