## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RM Wind-Down Holdco LLC, et al.,[1] | Case No. 18-11795 (MFW) |
| Debtors. | (Jointly Administered) |

**Hearing Date: January 17, 2019 at 10:30 a.m. (ET)**
**Objection Deadline: January 10, 2019 at 4:00 p.m. (ET)**

### DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING FIVE SALES OF LIQUOR LICENSES FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move the Court (this "Motion") for the entry of an order, substantially in the form annexed hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to complete five (5) separate sales (collectively, the "Sales") of liquor licenses (collectively, the "Liquor Licenses") for certain Closed Premises (as defined below), free and clear of all liens, claims, encumbrances, and interests (collectively, the "Encumbrances").[2]  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows:  RM Wind-Down Holdco LLC (f/k/a RM Holdco LLC) (6847); RM Wind-Down Opco LLC (f/k/a RM Opco LLC) (7122); RM Wind-Down HQ LLC (f/k/a RM HQ LLC) (8615); RM Wind-Down Chevys LLC (f/k/a RM Chevys LLC) (N/A); RM Wind-Down Acapulco LLC (f/k/a RM Acapulco LLC) (N/A); and RM Wind-Down El Torito LLC (f/k/a RM El Torito LLC) (N/A).

[2]    Notwithstanding anything herein to the contrary, the term "Encumbrances" does not include state or other local laws or regulations regarding the approval of any transfer or assignment of liquor licenses, or any taxes or fees specifically imposed on such liquor licenses under applicable law.

01:23960748.4

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States

District Court for the District of Delaware dated as of February 29, 2012.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of

Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in

connection with this Motion to the extent that it is later determined that the Court, absent consent

of the parties, cannot enter final orders or judgments in connection herewith consistent with

Article III of the United States Constitution.  Venue is proper before the Court pursuant to

28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections

105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

**A.      General Background**

2.      August 5, 2018 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  On August 7, 2018 the Court

entered an order [D.I. 43] authorizing the joint administration and procedural consolidation of

these cases (collectively, the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b).

3.      The Debtors continue to manage their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the

appointment of a trustee or examiner in the Chapter 11 Cases, and no statutory committee has

been appointed.

4.      Additional information regarding the Debtors, including their business

operations, corporate and capital structure, and the events leading to the commencement of the

Chapter 11 Cases, is set forth in the *Declaration of Jonathan Tibus in Support of the Debtors'*
*Chapter 11 Petitions and First Day Pleadings* [D.I. 14] (the "First Day Declaration") and
incorporated by reference herein.

**B.      Background Regarding RM Asset Sale**

5.      On the Petition Date, the Debtors sought approval of (i) proposed bid
procedures (the "Bid Procedures") in connection with a sale of substantially all of the Debtors'
assets (the "RM Asset Sale") and (ii) certain bid protections (the "Stalking Horse Bid
Protections") for the Stalking Horse Bidder.  On September 6, 2018, the Court entered an order
approving, among other things, the Bid Procedures and Stalking Horse Bid Protections [D.I. 187]
(the "Bid Procedures Order"), which provided, among other things, that interested parties were
required to submit Qualified Bids (as defined in the Bid Procedures Order) by September 21,
2018 (the "Bid Deadline").

6.      The Debtors did not receive any competing bids for any subset of their
assets prior to the Bid Deadline and, accordingly, the auction scheduled for October 4, 2018, was
cancelled.  The Debtors presented the Stalking Horse Bid, deemed the highest and best bid for
the Debtors' assets, at a sale hearing conducted on September 27, 2018.

7.      On September 28, 2018, the Court entered that certain *Order*
*(I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of the*
*Debtors Outside of the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and*
*Clear of all Liens, (III) Authorizing the Assumption and Assignment or Rejection of Certain*
*Executory Contracts and Unexpired Leases and (IV) Granting Related Relief* [D.I. 288] (the
"Sale Order"), thereby approving, among other things, the sale of substantially all of the
Debtors' assets and the assumption and assignment of certain executory contracts and unexpired

01:23960748.4

leases to FM Restaurants (PT), LLC (together with its affiliates or assignees, the "Purchaser"), pursuant to that certain Asset Purchase Agreement dated August 5, 2018.

8.    The RM Asset Sale closed on October 29, 2018 (the "Closing Date"). Pursuant to the Sale Order and the APA, the Purchaser, among other things, has the ability during the Designation Rights Period (as defined in the Sale Order)—which shall expire 90 days after the Closing Date, January 27, 2019— to designate any Designation Right Contract (as defined in the Sale Order) for assumption and assignment, and, subject to objection rights held by counterparties thereto, such designated Designation Rights Contract shall be assumed and assigned to the Purchaser.

9.    During the Designation Rights Period, the Debtors are continuing to monetize assets excluded from the RM Asset Sale, including the Liquor Licenses subject to this Motion.  Each Liquor License subject to the relief sought herein was utilized in connection with a restaurant location that the Debtors no longer operate and have not sold to the Purchaser (such premises, collectively, the "Closed Premises").

**C.    The Debtors' Sale of the Liquor Licenses for the Closed Premises**

10.    The Liquor Licenses were previously utilized at certain of the Debtors' restaurants that were closed between February 2016 and February 2018.  Such licenses are generally transferrable, subject to defined procedures and approvals, and therefore may be marketed and sold.  The Debtors attempted to sell the Liquor Licenses prior to the Petition Date but, upon further consideration, determined to preserve the Liquor Licenses for the Debtors' chapter 11 process in an effort to augment the ultimate value received through the proposed sale of substantially all of the Debtors' assets.  The Liquor Licenses subject to this Motion, however, were not purchased by the Purchaser, and, accordingly, may be sold and assigned to third parties.

11.     At this stage of the Debtors' wind down, and given the Purchaser's determination not to obtain the Liquor Licenses, the Debtors seek to sell the Liquor Licenses which were previously used at the following Closed Premises:

| Store No. | Store Location |
|---|---|
| 7230 | Torrance, California |
| 7247 | Temecula, California |
| 7060 | Santa Clara, California |
| 52 | San Pedro, California |
| 59 | Stanton, California |

12.     The Debtors' senior management and advisors have been diligently marketing the Liquor Licenses for the Closed Premises and engaged two brokers to help facilitate sales thereof.  The brokers, each of which is paid by the ultimate buyer of the subject Liquor Licenses, utilized their respective vast networks to locate viable (and, indeed, likely) buyers for each Liquor License.

**D.      The Debtors' Marketing Efforts for the Liquor Licenses**

13.     As noted above, the Debtors, together with their professional advisors, have been marketing the Liquor Licenses subject to this Motion, and others similar to them, since well before the Petition Date.  As a result of those efforts and those expended by the Debtors' brokers, the Debtors have entered into or, as applicable, expect to enter into in the near term, five (5) separate Escrow and Purchase Agreements (collectively, the "Purchase Agreements")[3] to sell Liquor Licenses to third party purchasers (collectively, the "Liquor License Buyers").  In conformity with Local Bankruptcy Rule 6004-1, the executed Purchase

---

[3]     The Debtors are in active discussions with three (3) Liquor License Buyers to finalize applicable Purchase Agreements, which will be on substantially similar terms to the terms set forth in the executed Purchase Agreements attached to this Motion.

Agreements are attached hereto as Exhibits B and C and the material terms of the attached or contemplated Purchase Agreements are summarized below:

| Exh. | Store Location | Purchaser | Purchase Price |
|------|----------------|-----------|----------------|
| B | Temecula, California | Sweet Spot Club, LLC | $25,000 |
| C | Santa Clara, California | Mayfair Ventures Corp. | $30,000 |
| N/A | Torrance, California | 28863 Riverside Drive LLC | $91,000 |
| N/A | San Pedro, California | Tartine Restaurant Group, LLC | $90,000 |
| N/A | Stanton, California | Open Bar Taphouse, Inc. | $45,000 |

14.     The Purchase Agreements were all negotiated (or are being negotiated) at arms' length and in good faith with the respective Liquor License Buyers.

15.     The Debtors are continuing to market additional liquor licenses that are not currently subject to a Purchase Agreement and, to the extent the Debtors secure a buyer for such licenses, the Debtors will seek appropriate relief from the Court to consummate those transactions.

## RELIEF REQUESTED

16.     By this Motion, the Debtors seek the entry of an order approving and authorizing the Debtors to complete sales of Liquor Licenses contemplated under the Purchase Agreements pursuant to their terms, free and clear of all Encumbrances.

## BASIS FOR RELIEF

17.     For the reasons explained in detail below, the Debtors believe that the approval of a private sale of the Liquor Licenses to the respective Liquor License Buyers pursuant to the terms and conditions of the Purchase Agreements is not only appropriate but in

the best interest of the Debtors, their estates, and creditors.  Section 363(b)(1) of the Bankruptcy

Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the

ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of

the Bankruptcy Code provides: "The Court may issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  In

pertinent part, Bankruptcy Rule 6004 states that "all sales not in the ordinary course of business

may be by private sale or by public auction."  Fed. R. Bankr. P. 6004(f)(1).  With respect to the

notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent

part, that,

> [T]he notice of a proposed use, sale or lease of property . . . shall include . . . the
> terms and conditions of any private sale and the deadline for filing objections.
> The notice of a proposed use, sale or lease of property, including real estate, is
> sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1)

18.    To approve the use, sale, or lease of property out of the ordinary course of

business, this Court must find some articulated business justification for the proposed action.

*See In re Abbotts Dairies of Pa. Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting

the articulated business justification and good faith tests of *Comm. of Equity Sec. Holders v.

Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *see also In re Del. &

Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third Circuit had

adopted a "sound business purpose" test in *Abbotts Dairies*).

19.    Generally, courts have applied four factors in determining whether a sale

of a debtor's assets should be approved: (a) whether a sound business reason exists for the

proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the

transaction has been proposed and negotiated in good faith; and (d) whether adequate and

reasonable notice is provided. *See Lionel*, 722 F.2d at 1071 (setting forth the "sound business

purpose" test); *Abbotts Dairies*, 788 F.2d at 145-57 (implicitly adopting the articulated business

justification test and adding the "good faith" requirement); *Del. & Hudson Ry.*, 124 B.R. at 176

("Once a court is satisfied that there is a sound business reason or an emergency justifying the

pre-confirmation sale, the court must also determine that the trustee has provided the interested

parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the

purchaser is proceeding in good faith.").

20.     This fundamental analysis does not change if the proposed sale is private,

rather than public. *See, e.g.*, *In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla.

1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all

or substantially all of the estate assets not in the ordinary course of business under § 363(b).").

The bankruptcy court "has ample discretion to administer the estate, including authority to

conduct public or private sales of estate property." *In re WPRV-TV, Inc.*, 143 B.R. 315, 319

(D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992); *accord, In re Canyon

P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).  Here, the proposed private sale of the Liquor

Licenses to the Liquor License Buyers meets all of these requirements and should be approved.

**A.     Proceeding by Private Sale Reflects an Exercise of the Debtors' Business Judgment**

21.     There is a sound business justification for the Debtors' preference to

proceed with a private sale, rather than conducting a public sale of the Liquor Licenses.  The

Debtors submit that an order granting the relief requested herein is a matter within the sound

discretion of the Court and would be consistent with the provisions of the Bankruptcy Code. *See*

11 U.S.C. § 105(a).  As a result of each Liquor License Buyer's interest in applicable Liquor

Licenses, and their willingness to provide fair and reasonable consideration based on that

interest, the Debtors believe that their estates and creditors would benefit from the approval of the proposed sales without the added time, energy, and expenses associated with a public auction.  Moreover, the Debtors' estates will benefit by closing the Sales as soon as possible, so as to limit the ongoing accrual of administrative expenses during the Debtors' wind down.

22.     Indeed, if the Debtors were forced to conduct a public auction for the Liquor Licenses, the Debtors would not be guaranteed the commitment (or pending commitment) of the respective Liquor License Buyers, much less at the price to be provided through the proposed private Sales and related Purchase Agreements.

**B.     The Purchase Prices are Fair and Reasonable**

23.     The Debtors believe that a private sales of the Liquor Licenses to the Liquor License Buyers under the terms and conditions of the Purchase Agreements are more likely to close in a timely and efficient manner than a public auction because, in the Debtors' informed business judgment, the respective agreements provide them with a strong indication that the Liquor License Buyers are motivated to close each contemplated transaction in such a manner.  Given the Liquor License Buyers' collective strong desire to close on an expedited basis so that they may each utilize the Liquor Licenses as soon as practicable, the Debtors believe that the Sales—as opposed to a lengthy auction process—represent the best opportunity to extract immediate and meaningful value from the Liquor Licenses in the amounts identified above.

24.     The Debtors believe that the purchase prices are a fair and reasonable price for each applicable Liquor License.  The purchase prices were the result of extensive marketing and arm's length negotiations, and an exhaustive search by the Debtors' brokers on the estates' behalf.  The Debtors, their advisors and their brokers have carefully considered and

analyzed each Liquor License Buyer's offer as set forth in the Purchase Agreements and have

concluded that a sale of the Liquor License pursuant to each applicable Purchase Agreement will

result in obtaining maximum value for such Liquor License and is in the best interests of their

estates and creditors.  In consideration of the foregoing, the Debtors believe that each Purchase

Agreement provides a fair and reasonable value for the applicable Liquor License.

**C.      The Sales are Proposed in Good Faith**

25.      The Debtors submit that the Sales contemplated hereby and in the

Purchase Agreements have been proposed in good faith, as the agreements are the product of

good faith, arm's length negotiations between the Debtors, on the one hand, and each Liquor

License Buyer, on the other, and were negotiated with the active involvement of the Debtors'

brokers and advisors.  The Debtors submit that each Sale is not the product of collusion or bad

faith.  Further, no evidence suggests that any Purchase Agreement is anything but the product of

arm's length negotiations between the Debtors, the applicable Liquor License Buyer and their

respective professionals.

**D.      The Sales Should be Free and Clear of Liens, Claims and Interests**

26.      A debtor in possession may sell property under section 363(b) and section

363(f) of the Bankruptcy Code "free and clear of any interest in such property of an entity other

than the estate" if any one of the following conditions is satisfied:

(1)      applicable non-bankruptcy law permits the sale of such property free and
clear of such interest;

(2)      such entity consents;

(3)      such interest is a lien and the price at which such property is to be sold is
greater than the aggregate value of all liens on such property;

(4)      such interest is a bona fide dispute; or

01:23960748.4

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

27.     Although the term "any interest" is not defined in the Bankruptcy Code, the Third Circuit has noted the trend in modern cases toward a "broader interpretation which includes other obligations that may flow from ownership of the property." *Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 258-59 (3d Cir. 2000). The scope of section 363(f) is not limited to *in rem* interests in a debtor's assets. *Id.* (citing *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-82 (4th Cir. 1996)). A debtor can therefore sell its assets under section 363(f) free and clear of successor liability that otherwise would have arisen under federal statute. *Id.*

28.     The Debtors request approval to sell the Liquor Licenses on a final "as is" basis, free and clear of any Encumbrances in accordance with section 363(f) of the Bankruptcy Code. The Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f) in connection with any Encumbrance a party may assert against the Liquor Licenses. Furthermore, the Debtors propose that any such liens, claims, and encumbrances be transferred and attached to the proceeds of the Liquor Licenses, as applicable, with the same priority and subject to the same rights, claims, defenses, and objections, if any, of all parties with respect thereto. Finally, as noted above, the term "Encumbrances" does not include state or other local laws or regulations regarding the approval of any transfer or assignment of liquor licenses, or any taxes or fees specifically imposed on such liquor licenses under applicable law.

01:23960748.4

E.     **The Liquor License Buyers Should be Entitled to the Protections Afforded by Section 363(m) of the Bankruptcy Code**

29.     The Debtors additionally request the Court to find that the Purchaser be entitled to the protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale.  Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

30.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.  Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m), has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'"  *Abbotts Dairies*, 788 F.2d at 147.

31.     To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders."  *Id.*  (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978); *see also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings."  *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *Rock Indus.*, 572 F.2d at 1198).

32.     As required by section 363(m) of the Bankruptcy Code, both the Debtors and each Liquor License Buyer have acted in good faith in negotiating the applicable Sale. There is no evidence of fraud or collusion in the terms of the Purchase Agreements.  The Liquor License Buyers are not insiders of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code, and all negotiations have been conducted on an arm's length, good faith basis.

33.     All known parties with an interest in the Liquor License will receive notice of the Sales and will be provided an opportunity to be heard.  The Debtors submit that such notice is adequate for entry of the Proposed Order and satisfies the requisite notice provisions required under section 363(b) of the Bankruptcy Code.  Under the circumstances, the Liquor License Buyers should be afforded the benefits and protections that section 363(m) provides to a good faith purchaser.

## REQUEST FOR WAIVER OF STAY

34.     The Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief sought herein is necessary to maximize value for certain of the Debtors' assets that could provide for meaningful recoveries for the Debtors' creditors and to avoid unnecessary administrative expense that could undermine any such value.  Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

35.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent such requirements are deemed to apply.

01:23960748.4

**NOTICE**

36.    A copy of this Motion and notice of the hearing thereon are being sent to (i) the Office of the United States Trustee for the District of Delaware; (ii) Thompson Hine LLP as counsel to Wells Fargo Bank, National Association as agent to the Prepetition Secured Lenders; (iii) Cleary Gottlieb Steen & Hamilton LLP as counsel to Z Capital Group, LLC; (iv) Morris, Nichols, Arsht & Tunnell LLP as co-counsel to Z Capital Group, LLC; (v) Schulte Roth & Zabel LLP and Landis, Roth & Cobb, LLP as counsel to Tennenbaum Capital Partners, LLC; (vi) all parties known to hold or assert an Encumbrance against the Liquor Licenses; and (vii) all parties who, as of the filing of this Motion, have entered and appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

*[Remainder of Page Intentionally Left Blank]*

01:23960748.4

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:  December 27, 2018
Wilmington, Delaware

SIDLEY AUSTIN LLP
Christina M. Craige
Ariella Thal Simonds
Laurie Tomassian
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Andrew L. Magaziner*
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Edmon L. Morton (No. 3856)
Andrew L. Magaziner (No. 5426)
Elizabeth S. Justison (No. 5911)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

ATTORNEYS FOR THE DEBTORS AND DEBTORS
IN POSSESSION

01:23960748.4