## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RM Wind-Down Holdco LLC, et al.[1] | Case No. 18-11795 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline:** **March 15, 2019 at 4:00 p.m. (ET)** |
| | **Hearing Date:** **March 26, 2019 at 10:30 a.m. (ET)** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE, FURTHER EXTENDING THE EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND THE SOLICITATION AND ACCEPTANCE THEREOF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby submit this motion (this "Motion") for entry of an order, substantially in the form

attached hereto as Exhibit A (the "Order"), pursuant to section 1121(d) of title 11 of the United

States Code (the "Bankruptcy Code"), further extending the Exclusive Periods (as defined

below) for the filing of a chapter 11 plan and soliciting acceptances thereof.  In support of this

Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334, and the *Amended Standing Order of Reference* from the United States District Court

for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows:  RM Wind-Down Holdco LLC (f/k/a RM Holdco LLC) (6847); RM Wind-Down Opco LLC (f/k/a RM Opco LLC) (7122); RM Wind-Down HQ LLC (f/k/a RM HQ LLC) (8615); RM Wind-Down Chevys LLC (f/k/a RM Chevys LLC) (N/A); RM Wind-Down Acapulco LLC (f/k/a RM Acapulco LLC) (N/A); and RM Wind-Down El Torito LLC (f/k/a RM El Torito LLC) (N/A).

pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the

"Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with

this Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are 28 U.S.C. § 1452,

section 1121(d) of the Bankruptcy Code, and Rules 9006 and 9027 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**A.      General Background**

4.      On August 5, 2018 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  On August 7, 2018, the United

States Bankruptcy Court for the District of Delaware (the "Court") entered an order [D.I. 43]

authorizing the joint administration and procedural consolidation of these cases (the "Chapter 11

Cases") pursuant to Bankruptcy Rule 1015(b).

5.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party

has requested the appointment of a trustee or examiner in the Chapter 11 Cases, and no statutory

committee has been appointed.

6.      Additional information regarding the Debtors, including their business operations,

corporate and capital structure, and the events leading to the commencement of the Chapter 11

01:24221032.1

Cases, is set forth in the *Declaration of Jonathan Tibus in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 14] and incorporated by reference herein.

**B.      Background Regarding Sale Process and Sale of Substantially All Assets**

7.      Prior to the Petition Date, the Debtors, in consultation with their professional advisors, engaged in a comprehensive marketing process to potential investors, which process yielded three third party bids for substantially all of the Debtors' assets (collectively, the "Assets").  The Debtors also received a bid from Z Capital Group, whom the Debtors ultimately selected as the stalking horse bidder (the "Stalking Horse Bidder") for the Assets.

8.      To facilitate a value-maximizing sale process for substantially all of their Assets, on the Petition Date, the Debtors filed the *Debtors' Motion for Entry of (I) an Order (A) Authorizing and Approving the Debtors' Entry into the Stalking Horse APA and Approving Certain Bid Protections in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Omit Certain Confidential Schedules form the Stalking Horse APA, (C) Authorizing and Approving Bidding Procedures, (D) Scheduling an Auction and Sale Approval Hearing, (E) Approving the Form and Manner of the Notice of the Sale Hearing, (F) Approving Assumption and Assignment Procedures, and (G) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Execution Contracts and Unexpired Leases in Connection With the Sale, and (C) Granting Related Relief* [Docket No. 15] (the "Bidding Procedures Motion").[2]  The Court entered an order approving the Bidding Procedures Motion on September 6, 2018 [D.I. 187] (the "Bidding Procedures Order"), thereby initiating the sale process further detailed below.

---

[2]      Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Motion.

9.      After the entry of the Bidding Procedures Order, the Debtors, in consultation with their professional advisors, continued to market their Assets in an effort to generate the highest and best bid for such Assets or a subset thereof.  The Debtors did not receive any Qualified Bids other than the Stalking Horse APA by the Bid Deadline, however, and the Auction for the Assets was subsequently cancelled.  Since no Auction was held, the Stalking Horse Bidder was deemed the Successful Bidder and the Stalking Horse APA was rendered the Successful Bid.

10.      On September 28, 2018, the Court entered that certain *Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside of the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of all Liens, (III) Authorizing the Assumption and Assignment or Rejection of Certain Executory Contracts and Unexpired Leases and (IV) Granting Related Relief* [D.I. 288], thereby approving the sale (the "Sale") of the Assets and the assumption and assignment of certain executory contracts and unexpired leases to FM Restaurants (PT), LLC (together with its affiliates or assignees, the "Purchaser"), pursuant to the Stalking Horse APA.  The Sale closed on October 29, 2018.

**B.      Background Regarding Claims Reconciliation Process**

11.      The deadline to file (i) prepetition claims against the Debtors' estates and (ii) administrative expense claims arising between the Petition Date and October 10, 2018, was established as November 15, 2018 (the "Bar Date").  Since the Bar Date, the Debtors have been continuously reviewing the claims filed against the Debtors' estates and, in connection therewith, have filed four omnibus claim objections, thereby objecting to the classification, amount or overall validity of certain claims that the Debtors determined were improperly asserted.  As of the date hereof, the Court has entered two orders sustaining those objections [D.I. 462; 474], and two claim objections remaining pending before the Court.  The Debtors will continue to review

01:24221032.1

the claims register to determine if additional claims should be subjected to objection and, upon conclusion of the claims reconciliation process, the Debtors will determine whether they have sufficient assets to pursue a chapter 11 plan and make distributions to various creditors in connection therewith or otherwise.

## RELIEF REQUESTED

12.     By this Motion, the Debtors request, pursuant to section 1121(d)(1) of the Bankruptcy Code, entry of an order extending the periods within which only the Debtors may file a chapter 11 plan (the "Plan Period") and solicit acceptances thereof (the "Solicitation Period" and together with the Plan Period, the "Exclusive Periods") by approximately ninety (90) days.  Unless extended, the Debtors' Plan Period and Solicitation Period will expire on March 4, 2019, and May 2, 2019, respectively.[3]  The Debtors hereby seek to extend the Plan Period and Solicitation Period through and including June 3, 2019, and July 31, 2019, respectively, without prejudice to the Debtors' right to seek further extensions of both periods, as may be appropriate under the circumstances.  This is the Debtors' second request for an extension of the Exclusive Periods.

## BASIS FOR RELIEF REQUESTED

13.     The exclusive periods under section 1121(d) of the Bankruptcy Code are intended to afford the debtor a full and fair opportunity to formulate and propose a chapter 11 plan and to solicit acceptances thereof without the disruption that might be caused by the filing of competing plans of reorganization by non-debtor parties.  To this end, where the exclusive periods prove to be unfeasible timeframes, section 1121(d) of the Bankruptcy Code allows the Court to extend such exclusive periods for "cause":

---

[3]     By operation of Local Rule 9006-2, the Plan Period and Solicitation Period are automatically extended until such time as the Court has had an opportunity to consider and act upon the relief requested in this Motion.

01:24221032.1

(1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

(2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.

(B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

## A.     Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods for "Cause"

14.     It is well established that the decision to extend a debtor's exclusive periods is committed to the sound discretion of the Court, and should be based upon the facts and circumstances of a particular case. *See First Am. Bank of New York v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *203 N. LaSalle Street P'ship v. Bank of Am., N.A.*, 1999 U.S. Dist. LEXIS 19425, at *12 (N.D. Ill. 1999); *In re Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not define "cause" for purposes of an extension request under section 1121(d), courts have looked to the legislative history of section 1121(d) for guidance. *See In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Such legislative history indicates that Congress did not intend that the 120- and 180-day exclusive periods be a hard and fast limit. *See Amko Plastics, Inc.*, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of [section 1121(d)] is flexibility."). Rather, Congress intended that the debtor's exclusive periods be of an adequate length, given the

circumstances, for a debtor to formulate, negotiate and draft a viable plan without the disruptions that would occur with the filing of competing plans of reorganization.  *See Geriatrics Nursing Home v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by competition, the court held, is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business.").  Further, Congress recognized that often a one hundred twenty (120) day exclusive period will not afford a debtor sufficient time to formulate and negotiate a chapter 11 plan:

> [t]he court is given the power, though, to increase . . . the 120-day period depending on the circumstances of the case.  [T]he bill allows the flexibility for individual cases that is not available today.  For example, if an unusually large company were to seek reorganization under chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement.

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted); *see also In re Amko Plastics*, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); Gaines, 71 B.R. at 297.

15.     Factors considered by the courts in deciding whether cause exists to grant an extension of the exclusive periods include:  (a) the size of the debtor and difficulty in formulating a plan; (b) the necessity of sufficient time to negotiate a plan and prepare adequate information to allow a creditor to determine whether to accept the plan; (c) the existence of good faith progress toward reorganization; (d) whether the debtor is paying its debts as they come due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiating with creditors; (g) the length of time the case has been pending; (h) whether the debtor is seeking the extension to pressure creditors to submit to its demands; and (i) whether unresolved contingencies exist.  *In re Dow Corning Corp.*, 208 B.R. 661, 664–65

01:24221032.1

7

(Bankr. E.D. Mich. 1997); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002).

16.     Not all of the above factors are necessary or relevant in determining whether to grant an extension of the exclusivity periods.  *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (identifying only four of the factors as relevant in determining whether cause exists to support an extension); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding cause to extend exclusivity based on three of the factors).  Here, however, nearly all of the factors are relevant and application thereof favors further extending the Exclusive Periods.

**B.     Cause Exists for a Further Extension of the
        Exclusive Periods in These Chapter 11 Cases**

      **i.     The Size, Complexity, and Duration of the Chapter 11 Cases**

17.     In the approximately seven months since the Petition Date, the Debtors have, among other things, (i) pursued and ultimately consummated the Sale of substantially all their Assets; (ii) prepared and filed their Schedules of Assets and Liabilities and Statements of Financial Affairs and established the Bar Date; (iii) responded to various creditor and landlord inquiries and demands; (iv) retained numerous professionals; (v) evaluated and resolved requests for additional adequate assurance of future payment from certain utility providers; (vi) obtained post-petition financing and resolved numerous objections raised in connection therewith; (vii) worked cooperatively with the Purchaser to meet the Debtors' obligations under the Stalking Horse APA; (viii) commenced the claims reconciliation process and obtained entry of multiple orders disallowing or modifying improperly asserted claims; (ix) rejected burdensome leases and contracts; (x) met their reporting obligations; (xi) assisted the Purchaser in connection with the assumption and rejection process contemplated by the APA and the designation rights

procedures related thereto; (xii) addressed and resolved numerous cure disputes arising from the assignment process; (xiii) successfully obtained multiple Court orders approving various sales of the Debtors' liquor licenses to numerous purchasers, thereby generating significant proceeds for the Debtors' estates; and (xiv) handled the various other tasks related to the administration of the Debtors' bankruptcy estates and these Chapter 11 Cases.  The Debtors submit that the complexity and relatively short duration of these Chapter 11 Cases warrants the further extension of the Exclusive Periods.

### ii.    The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information

18.    While the Debtors are working diligently with the Purchaser to bring these Chapter 11 Cases to an orderly and efficient conclusion, including analyzing claims asserted against the estates and prosecuting additional claim objections, as appropriate, the Debtors have not yet had sufficient time to complete that process.  Therefore, given that the Sale and various tasks incidental to the commencement of these Chapter 11 Cases have consumed a significant amount of the time, energy, and resources of the Debtors and their professional advisors to date, the Debtors believe that it is reasonable to request additional time to determine whether a chapter 11 plan is feasible under the circumstances.  Accordingly, the Debtors submit that this factor supports the relief requested.

### iii.    Good Faith Progress Made in These Chapter 11 Cases

19.    As detailed above, the Debtors have made significant and material progress in these Chapter 11 Cases.  The Debtors have complied with their reporting and disclosure requirements under the Bankruptcy Code, including the preparation and filing of their Schedules of Assets and Liabilities and Statements of Financial Affairs, and the timely filing of their monthly operating reports.  The Debtors have worked cooperatively with the Purchaser to

implement the designation rights procedures set forth in the Stalking Horse APA, consistent with the timeline contemplated thereby.  Moreover, the Debtors continue to work with the Purchaser in good faith to bring these Chapter 11 Cases to an orderly and efficient conclusion, as demonstrated by, among other things, the implementation and ongoing progress of the claims reconciliation process and the assumption and assignment and rejection process for executory contracts and unexpired leases of non-residential real property.  Accordingly, the Debtors submit that they have made good-faith progress in these Chapter 11 Cases, which weighs in favor of further extending the Exclusive Periods.

### iv.    The Debtors Are Paying Their Debts as They Come Due

20.    As the Debtors' undisputed post-petition obligations continue to be paid by the Debtors or by the Purchaser, to the extent it assumed such obligations under the Stalking Horse APA, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of the Debtors' post-petition creditors.  As such, the Debtors submit that this factor weighs in favor of further extending the Exclusive Periods.

### v.    The Debtors Are Not Seeking an Extension to Pressure Creditors

21.    The Debtors have worked diligently over the past several months to complete the sale process, resolve administrative expense claims against the estates, and otherwise to maximize the value of their estates and preserve that value for the Debtors' creditors in accordance with the priorities set out in the Bankruptcy Code.  The Debtors now require the extension sought by this Motion to bring these Chapter 11 Cases to an orderly and efficient conclusion.  The Debtors are not seeking an extension to pressure creditors or other parties-in-interest.

01:24221032.1

vi.    **Termination of the Debtors' Exclusive Periods**
       **Would Adversely Impact these Chapter 11 Cases**

22.    Termination of the Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize value and hinder progress made to date.  In effect, if the Court were to deny the Debtors' request for a further extension of the Exclusive Periods, any party-in-interest would be free to propose a chapter 11 plan for the Debtors.  Such a ruling could foster a chaotic environment with no central focus and cause substantial harm to the Debtors' efforts to preserve and maximize the value of their estates.

23.    Based on the foregoing, the Debtors respectfully submit that cause exists to further extend the Debtors' Exclusive Periods, pursuant to section 1121(d) of the Bankruptcy Code.  Specifically, the Debtors request that the Plan Period and Solicitation Period be extended through and including June 3, 2019, and July 31, 2019, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods, as may be appropriate under the circumstances.

## NOTICE

24.    Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) Thompson Hine LLP as counsel to Wells Fargo Bank, National Association as agent to the Prepetition Secured Lenders; (iv) Cleary Gottlieb Steen & Hamilton LLP as counsel to Z Capital Group, LLC; (v) Morris, Nichols, Arsht & Tunnell LLP as co-counsel to Z Capital Group, LLC; (vi) Schulte Roth & Zabel LLP and Landis, Roth & Cobb, LLP as counsel to Tennenbaum Capital Partners, LLC; and (vii) and all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of

01:24221032.1

papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, (i) further extending the Plan Period through and including June 3, 2019, (ii) further extending the Solicitation Period through and including July 31, 2019, and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  March 1, 2019
Wilmington, Delaware

SIDLEY AUSTIN LLP
Christina M. Craige
Kenneth P. Kansa
Anna Gumport
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Andrew L. Magaziner*
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Edmon L. Morton (No. 3856)
Andrew L. Magaziner (No. 5426)
Elizabeth S. Justison (No. 5911)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION