IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RM Holdco LLC, et al.,[1] | ) | Case No. 18-11795 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | | RE: Docket No. 600 |

**WESTCHESTER FIRE INSURANCE COMPANY'S OBJECTION TO
DEBTORS' MOTION FOR ENTRY OF AN INITIAL ORDER AND A FURTHER
ORDER (I) AUTHORIZING THE DEBTORS TO MAKE DISTRIBUTIONS TO
CLAIMANTS HOLDING ALLOWED FIRST PRIORITY SECURED CLAIMS AND
ALLOWED 503(b) CLAIMS; (II) AUTHORIZING THE DEBTORS TO ABANDON
CERTAIN PROPERTY; (III) DISMISSING THE DEBTORS' CHAPTER 11 CASES; (IV)
ESTABLISHING PROCEDURES WITH RESPECT TO FINAL FEE APPLICATIONS;
(V) AUTHORIZING THE DEBTOR ENTITIES TO BE DISSOLVED IN ACCORDANCE
WITH APPLICABLE STATE LAW; AND (VI) GRANTING RELATED RELIEF**

Westchester Fire Insurance Company ("**Westchester**"), for itself and for its affiliates that are also sureties of the debtors (collectively, with Westchester, the "**Sureties**"), objects to the *Debtors' Motion for Entry of an Initial Order and a Further Order (I) Authorizing the Debtors to Make Distributions to Claimants Holding Allowed First Priority Secured Claims and Allowed 503(b) Claims; (II) Authorizing the Debtors to Abandon Certain Property; (III) Authorizing the Debtors to Abandon Certain Property; (IV) Establishing Procedures with Respect to Final Fee Applications; (V) Authorizing the Debtor Entities to be Dissolved in Accordance with Applicable State Law; and (VI) Granting Related Relief* (the "**Motion**").[2] In support of this objection and in opposition to the Motion, Westchester states that:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: RM Holdco LLC (6847) ("Holdco"); RM Opco LLC (7122) ("Opco"); RM HQ LLC (8615) ("HQ"); RM Chevys LLC (N/A) ("Chevys"); RM Acapulco LLC (N/A) ("Acapulco"); and RM El Torito LLC (N/A) ("Torito"). The Debtors' headquarters and mailing address is 5660 Katella Avenue, Suite 200, Cypress, CA 90630.
[2] ECF No. 600 [hereinafter Motion].

**INTRODUCTON**

1.	The Debtors have not paid all the Sureties' and their obligees' claims, the liabilities on which are in part administrative expenses, in full, and the Sureties may need the Debtors' books and records in litigation about the Sureties' obligations under surety bonds that the Sureties issued for the Debtors; therefore, Westchester asks the Court to modify the Proposed Orders,[3] or any other proposed order providing substantially similar relief, as set forth in this objection, because the Court should neither dismiss these cases until the Debtors pay those claims in full nor authorize the Debtors to destroy their books and records.

**BACKGROUND**

2.	On August 5, 2018 (the "**Petition Date**"), the debtors (the "**Debtors**") commenced voluntary cases under Chapter 11 of the Bankruptcy Code by filing petitions with this Court.

3.	The Debtors are debtors in possession.

4.	The Sureties[4] are—of course—sureties of the Debtors. One or more of the Sureties issued surety bonds for the Debtors (the "**Surety Bonds**") and may remain obligated under at least the following ones:

(a)	Bond No. K08619517,[5] the penal sum of which is $660,000,

(b)	Bond No. K08839657,[6] the penal sum of which is $257,924,

(c)	Bond No. K08839694,[7] the penal sum of which is $124,000,

(d)	Bond No. K0861927A,[8] the penal sum of which is $127,300.

---

[3]	The term "Proposed Order" has the meaning that the Debtors gave to that term in the Motion.
[4]	The Sureties have collateral with respect to bonded obligations, among other things; the Sureties reserve all rights and remedies with respect to any such collateral.
[5]	The obligee of this surety bond is the State of California.
[6]	The obligee of this surety bond is Pacific Gas and Electric Company.
[7]	The obligee of this surety bond is Pacific Gas and Electric Company.

2

5. By filing the following proofs of claim and requests, Westchester is asserting claims, the liabilities on which are in part administrative expenses that have priority under Sections 503(b) and 507(a)(2) of the Bankruptcy Code and arise from or relate to the Surety Bonds and related agreements, against the Debtors and their estates (the "**Estates**"):

    (a) Claim No. 289,

    (b) Claim No. 290,

    (c) Claim No. 291,

    (d) Claim No. 292,

    (e) Claim No. 293,

    (f) Claim No. 294,

    (g) Claim No. 312,

    (h) Claim No. 337, and

    (i) *Westchester Fire Insurance Company's Request for the Entry of an Order Allowing and Directing Payment of Administrative Expenses.*[9]

6. Further, by filing the following proofs of claim and requests, some obligees of the Surety Bonds are asserting claims, the liabilities on which are in part administrative expenses that have priority under Sections 503(b) and 507(a)(2) of the Bankruptcy Code and may arise from or relate to obligations that the Sureties bonded by issuing the Surety Bonds, against the Debtors and their Estates:

    (a) Claim No. 343,

    (b) Claim No. 404, and

    (c) Claim No. 415.

---

[8] The obligees of this surety bond are the City of Los Angeles and the Department of Water and Power of the City of Loss Angeles.

[9] ECF No. 380.

7.      On October 24, 2018, the Court entered the *Order Approving Stipulation among the Debtors, FM Restaurants (PT), LLC and Westchester Fire Insurance Co.* (the "**Agreed Order**"),[10] by which the Court approved a stipulation setting forth a process enabling the Debtors to transfer their assets to FM Restaurants (PT), LLC ("**FM**") without unduly impairing the Sureties' rights. The Debtors and FM deviated from the agreed process, albeit on information and belief unintentionally, so the parties to the stipulation are still reconciling how much the Debtors and FM owe the Sureties under the Agreed Order.

## ARGUMENT

**I.    The Court should not enter an order dismissing these cases until the Debtors pay the administrative expenses that they owe to the Sureties.**

8.      A Chapter 11 case has three possible ends, one of which is dismissal under Section 1112(b).[11]

9.      Under Section 349(b), dismissing a Chapter 11 case—in general—restores the relationships between the debtor and its creditors and other parties in interest to their "prepetition . . . status quo," unless the Court orders otherwise "for cause,"[12] including "to protect rights [that were] acquired in reliance on the . . . case."[13]

---

[10] ECF No. 340. The Agreed Order "incorporate[s]" "[the *Stipulation among the Debtors, FM Restaurant (PT), LLC and Westchester Fire Insurance Co.*] . . . into th[e] Order as if [it is] fully set forth [t]herein." Agreed Order ¶ 2, at 1, ECF No. 340. Therefore, any administrative expense arising under that stipulation, which is attached to the Agreed Order as Exhibit A, ECF No. 340-1, also arises under the Agreed Order.

[11] *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017) ("Chapter 11 foresees three possible outcomes. . . . The third possible outcome is dismissal of the Chapter 11 case." (citing 11 U.S.C. § 1112(b))).

[12] *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017) ("[A dismissal] aims to return to the prepetition financial status quo. Nonetheless, recognizing that conditions may have changed in ways that make a perfect restoration of the status quo [ante] difficult or impossible, the [Bankruptcy] Code permits the bankruptcy court, 'for cause,' to alter a Chapter 11 dismissal's ordinary restorative consequences." (quoting 11 U.S.C. § 349(b)) (citing 11 U.S.C. § 349(b)(1)) (citation omitted)).

[13] *See* H.R. REP. NO. 95-595, at 338 (1977) ("The basic purpose of [11 U.S.C. § 349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case. . . . Where there is a question over the scope of the subsection, the court will make the appropriate orders to protect rights acquired in reliance on the bankruptcy case."), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6294.

10. One such right is a claim, the liability on which is an administrative expense: after all, one purpose of giving priority to allowed administrative expenses "is to induce entities to do business with a debtor [in possession] . . . by [e]nsuring that [they] receive payment for [any] services [that they] render[]."[14]

11. And the Court should not allow the Debtors and its secured creditors, one of which has a first-priority lien on almost all the Debtors' assets, to keep the benefits of these cases without paying their costs. According to the Debtors, "the Secured Lenders . . . have agreed to pay the 'freight' for the remainder of these proceedings" by "satisfying"—among other claims—"all . . . Allowed 503(b) Claims (including allowed 503(b)(9) Claims) asserted against the Debtors' estates."[15]

12. Therefore, the Court should condition the proposed dismissal of these cases on the satisfaction of—among other claims—

    (a)    every claim arising under or for breach of a postpetition agreement to which the Debtors and Westchester are parties, such as the Agreed Order,

    (b)    every claim, the liability on which is an administrative expense under the Agreed Order, such as "any indemnity claim[] against the Debtors on account of any Bonded Obligations satisfied by Westchester, which Bonded Obligations were incurred postpetition,"

    (c)    every claim,

            (i)    proof of which one of the Sureties has filed and

            (ii)    the liability on which is an administrative expense under Section 503(b) or another provision of the Bankruptcy Code,

    (d)    every claim,

---

[14] *In re Valley Media, Inc.*, 279 B.R. 105, 141 (Bankr. D. Del. 2002) (citing *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1097 (9th Cir. 1995)).

[15] Motion ¶ 24, at 11, ECF No. 600. The term "Secured Lenders" has the meaning that the Debtors gave to that term in the Motion.

        (i)        to which one of the Sureties has or could become subrogated by discharging its duties under a surety bond and

        (ii)       the liability on which is an administrative expense under Section 503(b) or another provision of the Bankruptcy Code, and

(e)       every claim

        (i)        arising from an obligation that one of the Sureties bonded by issuing a surety bond or a similar instrument and

        (ii)       the liability on which is an administrative expense under Section 503 or another provision of the Bankruptcy Code.

13. Further, the Court should not enter an order dismissing these cases, such as the Dismissal Order,[16] until either the Court has determined or the Debtors have settled all claims, the liability on which is an administrative expenses, and all requests for the allowance of an administrative expense—especially the Sureties' and all obligees'; otherwise, the Debtors could avoid the need to pay valid administrative expenses just by delaying their allowance.

14. And the Court should add the following provisions to the Initial Order[17] before entering it:

(a)       Unless Westchester consents otherwise in writing, the Certification should also verify that

        (i)        the Court has determined or approved a settlement of every request for allowance of an administrative expense, so that every claim, the liability on which is allegedly an administrative expense, is allowed or disallowed and

        (ii)       the Debtors are unaware of any unpaid debt that is or allegedly is entitled to repayment as an administrative expense, other than any debt that the Debtors owe to the Secured Lenders.

(b)       A party in interest may object to the contents of the Certification.

---

[16] The term "Dismissal Order" has the meaning that the Debtors gave to that term in the Motion.

[17] The term "Initial Order" has the meaning that the Debtors gave to that term in the Motion.

(c) A party in interest has until 4:00 P.M. (EDT) on the date that is 14 days after the Debtors file the Certification (the "**Objection Deadline**") to file an objection to the contents of the Certification (an "**Objection**").

(d) If no party in interest files an Objection before the Objection Deadline, the Debtors may file a certificate of no objection for the Certificate according to Del. Bankr. L.R. 9013-1(j).

(e) If a party in interest files an Objection before the Objection Deadline,

  (i) the Court will hear the Objection at the next omnibus hearing after the Objection Deadline, and

  (ii) the Court will not enter the Dismissal Order unless

    (A) the Court overrules the Objection or

    (B) the Debtors and the objecting party otherwise resolve the Objection.

(f) The Debtors must also provide the following parties in interest with notice and a copy of the Certification:

  Employment Development Department
  Disability Insurance Branch, MIC 29VP
  P.O. Box 826880
  Sacramento, California 94280-0001

  Employment Development Department
  Bankruptcy Group, MIC 92E
  P.O. Box 826880
  Sacramento, California 94280-0001

  Patrick W. Henning, Director
  Employment Development Department
  P.O. Box 826880, MIC 83
  Sacramento, California 94280-0001

  Fiona Ma, CPA, Treasurer of the State of California
  State Treasurer's Office
  915 Capitol Mall, Suite 110
  Sacramento, California 95814

  Fiona Ma, CPA, Treasurer of the State of California
  State Treasurer's Office
  915 Capitol Mall, Suite 110

        Sacramento, California 95814

        Fiona Ma, CPA, Treasurer of the State of California
        State Treasurer's Office
        P.O. Box 942809
        Sacramento, California 94209-0001

        Pacific Gas and Electric Company
        P.O. Box 8329
        Stockton, California 95208

        Pacific Gas and Electric Company
        P.O. Box 997300, PG&E Corporation
        Sacramento, California 95899-7300
        Attn: Bankruptcy Department

        City Attorney
        111 North Hope Street, Room 340
        Los Angeles, California 90012

        Los Angeles Department of Water and Power
        Room 1555-H, 15th Floor
        111 North Hope Street
        Los Angeles, California 90012

**II.**    **The Court should not authorize the Debtors to destroy their books and records for three reasons.**

      **A.**    **Sections 105(a) and 554(a) and Bankruptcy Rule 6007 do not enable the Court to authorize the Debtors to destroy property of the Estates.**

15. Section 554(a) permits the Debtors to "abandon" property of their Estates if it "is burdensome . . . or . . . of inconsequential value and benefit to" the Estates;[18] however, abandoned property just becomes the Debtors',[19] unless another party has a right to possess the property.[20]

---

[18] 11 U.S.C. § 554(a).
[19] *See Lyn v. Transamerica Small Bus. Capital, Inc.* (*In re Lyn*), 483 B.R. 440, 451 (Bankr. D. Del. 2012) ("By operation of law, abandoned property is no longer property of the estate. The debtor's interest in the property is restored *nunc pro tunc* as of the petition date. Abandoned property is removed from the bankruptcy estate, 'divesting the trustee of control over that property and divesting the Court of jurisdiction over matters concerning the abandoned property.' The debtor holds abandoned property as if no bankruptcy had been filed." (quoting *DeVore v. Marshack* (*In re DeVore*), 223 B.R. 193, 200 (B.A.P. 9th Cir. 1998)) (citing *Fields v. Bleiman*, 267 F. App'x 144, 146 (3d Cir. 2008); *Catalano v. Comm'r of Internal Revenue*, 279 F.3d 682, 685 (9th Cir. 2002);

16. That is, Section 554(a) alone does not allow the Debtors to destroy property of their Estates, including their books and records: after all, nothing in Section 554(a) expressly allows the Debtors to do so,[21] and the plain meaning of Section 554(a) does not imply that the Debtors may destroy property of their Estates.[22]

17. Further, neither Section 105(a), which just provides the Court with the "authority to 'carry out' the provisions of the [Bankruptcy] Code,"[23] nor Bankruptcy Rule 6007, which just states the procedure for abandoning property of the Estates,[24] is a source of authority for the Debtor to destroy property. Authorizing the Debtors to destroy property of their Estates is not necessary or appropriate to carry out Section 554(a): after all, if the Debtors destroy property of their Estates, then the Debtors also terminate any possessory interest that abandoning that property can restore.[25] And no Bankruptcy Rule can create a substantive right, including a right to destroy property of the Estates,[26] and Bankruptcy Rule 6007 is not an exception.

---

*Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir. 2002); *Dewsnup v. Timm* (*In re Dewsnup*), 908 F.2d 588, 590 (10th Cir. 1990); and 8 COLLIER ON BANKRUPTCY ¶ 554.02[3] (15th ed. rev. 2005)) (citations omitted)).

[20] *See Dewsnup v. Timm* (*In re Dewsnup*), 908 F.2d 588, 590 (10th Cir. 1990) ("Following abandonment, 'whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right.'" (quoting *Dewsnup v. Timm* (*In re Dewsnup*), 87 B.R. 676, 681 (Bankr. D. Utah 1988))), *aff'd sub nom. Dewsnup v. Timm*, 502 U.S. 410 (1992).

[21] *See* 11 U.S.C. § 554(a) ("After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.").

[22] *Compare Abandon*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "abandon" to mean "[t]o relinquish or give up with the intention of never again reclaiming one's rights or interest in"), *with Destroy*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "destroy" to mean "[t]o damage (something) so thoroughly as to make unusable, unrepairable, or nonexistent" or "to ruin").

[23] *See Law v. Siegel*, 571 U.S. 415, 420–21 (2014) ("A bankruptcy court has statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code. . . . Section 105(a) confers authority to 'carry out' the provisions of the Code . . . ." (quoting 11 U.S.C. § 105(a))).

[24] *See Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 682 (S.D. Tex. 2007) ("[FED. R. BANKR. P.] 6007 provides the procedure for abandonment.").

[25] *See New Eng. Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.* (*In re Dairy Mart Convenience Stores, Inc.*), 351 F.3d 86, 92 (2d Cir. 2003) ("The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise do the right thing.");
*Opt-Out Lenders v. Millennium Lab Holdings II, LLC* (*In re Millennium Lab Holdings II, LLC*), 242 F. Supp. 3d 322, 331 n.12 (D. Del. 2017) ("[S]ection 105(a) cannot be used to craft new remedies that contravene existing statutory provisions or create substantive rights that are otherwise unavailable under applicable law." (citing *Law v. Siegel*, 571 U.S. 415, 421 (2014) and

18. Therefore, Sections 105(a) and 554(a) and Bankruptcy Rule 6007 do not enable the Court to authorize the Debtors to destroy property of the Estates.

**B. Section 363(b)(1) does not permit the Debtors to use other property of their Estates to destroy their books and records.**

19. The Debtors cannot destroy their books and records without using property of the Estates: after all, the Debtors must—and intend to[27]—pay someone to destroy their books and records.

20. Section 363(b)(1) permits the Debtors, after notice and a hearing, to use property of their Estates outside the ordinary course of business;[28] however, the Debtors must have a good business reason for using their power under Section 363(b)(1).[29]

21. There is no good business reason for the Debtors to use property of the Estates to destroy the books and records, however: after all, destroying them would not unlock

---

*New Eng. Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.* (*In re Dairy Mart Convenience Stores, Inc.*), 351 F.3d 86, 92 (2d Cir. 2003)) (citations omitted)). But 11 U.S.C. § 554(a) does not bar the Court from authorizing the Debtors to destroy property of their Estates. *See In re Ross*, 858 F.3d 779, 784 (3d Cir. 2017) ("[A] bankruptcy court's general authority does not extend to actions that conflict with 'specific,' 'explicit,' and 'express' terms of the Bankruptcy Code. . . . [W]hether or not the Bankruptcy Court's theses sections' *purposes* is not the question; all that matters is the 'express' and 'explicit' terms of the Bankruptcy Code." (quoting *Law v. Siegel*, 571 U.S. 415, 422–26 (2014)) (emphasis in original)).

[26] *See Branchburg Plaza Assocs., L.P. v. Fesq* (*In re Fesq*), 153 F.3d 113, 116 (3d Cir. 1998) ("[W]hen Congress accorded the Supreme Court authority to promulgate the Bankruptcy Rules, it stated [that] '[s]uch rules shall not abridge, enlarge, or modify any substantive right'. Thus, '[a]s a general matter, the Code defines the creation, alteration[,] or elimination of substantive rights[,] but the Bankruptcy Rules define the process by which these privileges may be effected'." (quoting *Hanover Indus. Mach. Co. v. Am. Can Co.* (*In re Hanover Indus. Mach. Co.*), 61 B.R. 551, 552 (Bankr. E.D. Pa. 1986)) (third and fourth alterations in original) (citations omitted)).

[27] *See* [Proposed] Order (I) Dismissing Debtors' Chapter 11 Cases and (II) Authorizing Dissolution of the Debtors in Accordance with Applicable State Law ¶ 6, at 2, ECF No. 600-2 ("The Debtors are authorized . . . to make all payments [that are] necessary to effectuate [the] destruction [of the remaining Books and Records] . . . .").

[28] *See* 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . .")

[29] *See Dai-Ichi Kangyo Bank, Ltd., Chi. Branch v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale[,] or lease of property of the estate under [11 U.S.C. § 363(b)], courts require the debtor to show that a sound business purpose justifies such actions." (citing five opinions, including *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*) 722 F.2d 1063, 1071 (2d Cir. 1983) and *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991))).

new value for or increase the value of the Estates, and abandoning them would be cheaper for the Estates than destroying them.[30]

22.     The Debtors have not addressed these facts; instead, the Debtors have drawn the Court's attention to another: the fact that, after the Court dismisses their cases, they would incur substantial costs by maintaining and storing their books and records, which have no value to them.[31] But this fact is irrelevant because the Debtors must use their power under Section 363(b)(1) for their Estates' benefit[32]—not their own;[33] that is, the Debtors may not use their Estates' other property, which the Debtors hold in trust for the benefit of the Estates' beneficiaries,[34] to reduce the burden that abandoned property puts on them.

---

[30] *See Neville v. Harris*, 192 B.R. 825, 830 (D.N.J. 1996) ("The abandonment provisions of the [Bankruptcy] Code were meant to permit a trustee to relinquish estate property that was either worthless or not worth the expense of administering."); *Rambo v. Chase Manhattan Mortg. Corp.* (*In re Rambo*), 297 B.R. 418, 433 (Bankr. E.D. Pa. 2003) ("Where property is of inconsequential value to the estate, abandonment under [11 U.S.C.] § 554, rather than sale under [11 U.S.C.] § 363, is the proper course." (citing *In re Feinstein Family P'ship*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000))).

[31] *See* Motion ECF No. 600 ("[T]he Debtors have sold substantially all of their assets through the RM Asset Sale, no longer have an operating business, and have largely wound down their affairs. A substantial portion of their Books and Records were transferred to the Purchaser as part of the RM Asset Sale. To the extent any Books and Records are retained, they will be of no value to the Debtors after dismissal of the Chapter 11 Cases. For these reasons, the Debtors submit that they should be incur the potentially significant costs associated with maintaining and storing Books and Records that have no value to their estates, and they should be authorized to abandon and destroy, as applicable, such Books and Records.").

[32] *See LaSalle Nat'l Bank v. Perelman*, 82 F. Supp. 2d 279, 292 (D. Del. 2000) ("The debtor in a Chapter 11 bankruptcy has a fiduciary duty to act in the best interest of the estate as a whole, including its creditors, equity interest holders[,] and other parties in interest." (citing *Gumport v. China Int'l Trust & Inv. Corp.* (*In re Intermagnetics Am., Inc.*), 926 F.2d 912, 917 (9th Cir. 1991) and *In re Harp*, 166 B.R. 740, 747 (Bankr. N.D. Ala. 1993))).

[33] *See In re Coram Healthcare Corp.*, 271 B.R. 228, 235 (Bankr. D. Del. 2001) ("A debtor in possession is bound by a duty of loyalty that includes an obligation to refrain from self-dealing[ and] to avoid conflicts of interests and the appearance of impropriety." (citing *Lopez-Stubbe v. Rodriguez-Estrada* (*In re San Juan Hotel Corp.*), 847 F.2d 931, 950 (1st Cir. 1988) and *Bennett v. Gemmill* (*In re Combined Metals Reduction Co.*), 557 F.2d 179, 196–97 (9th Cir. 1977))).

[34] *See In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 474 (3d Cir. 1998) ("[A]mong the fiduciary obligations of a debtor-in-possession is the 'duty to protect and conserve property in its possession for the benefit of creditors.'" (quoting *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990))); *United States v. Tech. Knockout Graphics, Inc.* (*In re Tech. Knockout Graphics, Inc.*), 833 F.2d 797, 802–803 (9th Cir. 1987) ("The debtor-in-possession is not free to deal with this property as it chooses, but rather holds it in trust for the benefit of creditors, just as would a trustee." (citing 11 U.S.C. § 1107 and S. REP. NO. 95-989, at 116 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5902)).

23.     Therefore, the Debtors have not shown that they have a good business reason for using their Estates' other property to destroy their books and records: nothing, including non-bankruptcy law, seems to bar the Debtors from abandoning their books and records, and the Debtors may relieve any burden to their Estates just by abandoning the books and records. Therefore, Section 363(b)(1) does not permit the Debtors to use other property of their Estates to destroy their books and records.

### C.     The Debtors have a duty under non-bankruptcy law to preserve their books and records.

24.     As "parties [who are] in . . . or . . . ha[ve] a reason to anticipate litigation[,]" the Debtors "ha[ve] an affirmative duty," which arises under non-bankruptcy law, "to preserve evidence that might be relevant to the issues in" the action.[35]

25.     As the Debtors themselves have noted, "the[ir] [E]states do not and will not have available funds to satisfy . . . [the] priority . . . [and] general unsecured claims [that] have been asserted against them."[36]

26.     And if the Court dismisses these cases, then the Debtors will not enjoy the benefits of the automatic stay,[37] a discharge,[38] or a plan containing a consensual release.[39]

---

[35] *Beard Research, Inc. v. Kates*, 981 A.2d 1175, 1185 (Del. Ch. 2009) (citing five opinions, including *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) and *Positran Mfg., Inc. v. Diebold, Inc.*, 2003 WL 21104954, at *2 (D. Del. May 15, 2003)), *accord In re Wechsler*, 121 F. Supp. 2d 404, 415 (D. Del. 2000) (citing *Howell v. Maytag*, 168 F.R.D. 502, 505 (M.D. Pa. 1996); *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 888 (S.D.N.Y. 1999); and *Bass v. Gen. Motors Corp.*, 929 F. Supp. 1287, 1288 (W.D. Mo. 1996)).

[36] Motion ¶ 2, at 3, ECF No. 600.

[37] *See* 11 U.S.C. § 362(c)(1), (2) ("Except as provided in subsections (d), (e), (f) and (h) of this section—(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; (2) the stay of any other act under subsection (a) of this section continues until the earliest of—(A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under Chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied . . . .").

[38] *See* 11 U.S.C. § 1141(d)(1)(A) ("Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation . . . ."); *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 503 (Bankr. D.N.J. 1997) ("A chapter 11 debtor receives a discharge upon confirmation of a plan, pursuant to 11 U.S.C. § 1141(d)(1).").

27. Therefore, litigation—especially some involving the Sureties, which have filed detailed proofs of claim against the Debtors[40]—is "reasonably foreseeable," so the Debtors have the duty to preserve relevant evidence,[41] which includes their books and records.

28. In all, there is no basis for the Court to authorize the Debtors to destroy their books and records, and the Debtors even have a duty to preserve evidence for anticipated litigation involving the Sureties; therefore, the Court should not allow the Debtors to destroy their books and records by

  (a) modifying Paragraph 4 of the Initial Order, Paragraph 6 of the Dismissal Order, and any other provision of the Proposed Orders, so that neither provision authorizes the Debtors to destroy their books and records and

  (b) adding the following provisions to both Proposed Orders:

    (i) Nothing in this Order authorizes the Debtors to destroy their remaining Books and Records.

    (ii) If the Debtors abandon their remaining Books and Records, and the Debtors, in their individual capacities, decide to dispose of the remaining Books and Records, then they must use due care when disposing of them, and nothing in this Order absolves the Debtors and their directors, officers, employees, and agents[42] of any responsibility for spoliating evidence.

    (iii) The Debtors have a duty to provide Westchester with access to their remaining Books and Records to the extent that those Books and Records contain any information that would help Westchester litigate any claim arising from and related to its status as a surety for the Debtors, and the Debtors may not dispose of

---

[39] *See* Motion ¶ 34, at 17, ECF No. 600 ("[Confirmation of] [a] Chapter 11plan is not feasible in these cases.").
[40] *See In re Kmart Corp.*, 371 B.R. 823, 844 (Bankr. N.D. Ill. 2007) ("Kmart did have a duty . . . to preserve documents relating to Global's administrative claims by the time they were filed on June 19, 2003, or a short period thereafter. The court so holds not because the claim filing date *per se* constitutes the latest possible trigger date, as urged by Global, but because the particular administrative claim filed in this case contained sufficient information to put Kmart on notice that litigation was likely." (citation omitted)).
[41] *See Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 480 (D. Del. 2012) ("The duty to preserve evidence begins when litigation is pending or reasonably foreseeable." (citing *Positran Mfg., Inc. v. Diebold, Inc.*, 2003 WL 21104954, at *2 (D. Del. May 15, 2003))), *aff'd*, 2014 WL 545440 (D. Del. Feb. 7, 2014).
[42] This provision might need to be modified to reflect the Debtors' management properly.

13

their remaining Books and Records in any way that would deprive Westchester of the access that the Debtors have a duty to provide.

## RESERVATION OF RIGHTS

29. The submission of this objection by the Sureties is not intended as, and shall not be construed as: (a) the Sureties' admission of any liability or waiver of any defenses or limitation of any rights of the Sureties with respect to any claims against any one or more of the Surety Bonds or under any indemnity or collateral agreement in favor of the Sureties; (b) the Sureties' waiver or release of any right to exoneration it may have against anyone with respect to any of the Surety Bonds; (c) the Sureties' waiver or release of its right to be subrogated to the rights of one or more of the parties paid in connection with the Surety Bonds; (d) an election of remedy; or (e) consent to the determination of any of the Debtors' liability to the Sureties by any particular court, including, without limitation, this Court.

30. The Sureties reserve the rights to object and put forth any argument in relation to any dismissal proposed by the Debtors, after notice and a hearing or otherwise, and to raise any arguments by any other party in their objection(s) to the Motion or the Certification or any future dismissal hearing.

31. The Sureties expressly reserve, and does not waive, any and all of its rights, claims, defenses, limitations, and/or exclusions in connection with the Sureties and any of the Debtors' or the Sureties' affiliates' rights and obligations under the Surety Bonds, any related agreement, such as an agreement of indemnity or a collateral agreement, applicable law, or otherwise. The Sureties further reserves all rights to assert any and all such rights, claims, defenses, limitations and/or exclusions in any appropriate manner or forum whatsoever (including, without limitation, any of its rights to have any non-core matter relating to the

interpretation of its contractual rights and Debtors' contractual obligations adjudicated by the United States District Court).

32. The Sureties further reserve all of its rights to raise any issues contained in this objection and any other related issues in any procedurally appropriate contested matter and/or adversary proceeding, including, without limitation, (i) objections to confirmation of any plan of dismissal of these cases; (ii) a separate adversary proceeding requesting any appropriate declaratory and/or injunctive relief; (iii) or an objection to any subsequent motion seeking approval of an asset sale to any prospective asset purchaser with respect to any contractual rights that may be adversely affected by a sale motion or the confirmation of any plan.

## CONCLUSION

**WHEREFORE**, Westchester asks the Court to sustain this objection, to modify the Proposed Orders, or any other orders granting substantially similar relief, as set forth in this objection, and to grant such other relief as is just and proper.

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Dated: April 22, 2019

/s/ *Gary D. Bressler*
Gary D. Bressler, Esq. (No. 5544)
300 Delaware Avenue, Suite 770
Wilmington, DE 19801
Telephone: 302-300-4515; Facsimile: 302-645-4031
gbressler@mdmc-law.com

*Counsel to Westchester Fire Insurance Company*